JUSTICE WEBER
delivered the Opinion of the Court.
James H. Trout (Trout), appeals the adverse judgment in his action as a licensed non-resident life insurance agent against Andrea Bennett, individually and as Commissioner of Insurance. The" District Court for the First Judicial District, Lewis and Clark-County, bifurcated the action into two parts. In the first portion the District Court held that Trout violated certain statutes, and fined him $250 for placing business with an insurance carrier before he had an appointment, and also fined him $250 for advertising himself as an agency. In the second portion, the District Court entered summary judgment for defendant Bennett, individually and as Commissioner. The District Court concluded that Andrea Bennett was not a ’’person” under 42 U.S.C. § 1983, and also concluded that Andrea Bennett was quasi-judicially immune. Trout appeals. We affirm in part and reverse in part.
The issues before the Court are:
1. Did Trout violate § 33-17-201(4), MCA (1985)?
2. Did Trout violate § 33-18-203, MCA?
3. Is Andrea Bennett, individually and as Commissioner, immune from § 1983 claims?
4. Does the doctrine of quasi-judicial immunity render Andrea Bennett, individually and as Commissioner, immune from suit under state law as to the remaining claims?
5. Did the District Court err in failing to rule on Trout’s motion to file a second amended complaint?
Trout is a California resident licensed as an insurance agent in the State of California. He started his business in Montana in 1983. A non-resident life insurance agent’s license was issued to him by the Montana Department of Insurance (Department). The license listed a California address and authorized Trout to sell life and disability insurance in Montana as a non-resident insurer. The license further provided that he could not ’’solicit business nor accept premiums ■under the name of [his] employing agency, or in conjunction with, or under the name of any other organization.”
*419 Two events sparked the investigation of Trout. First, the Department received a phone inquiry as to whether Trout was licensed to do business in Montana as ’’Trout Insurance” and received a letter complaining about Trout’s activities. Second, the Department received a letter from Trout himself containing the letterhead ’’Trout Insurance”, listing his Billings business address.
The Department investigator proceeded on the assumption that Trout, a licensed non-resident agent, was not permitted to maintain a Billings office and sell insurance in Montana, and that the stationery and telephone book ads indicated he was holding himself out to the public as a resident insurer. Trout filed the assumed business name of ’’Trout Insurance Agency” with the Secretary of State, under § 30-13-203, MCA. The Department investigator informed Trout he could not operate an office or do any business as Trout Insurance because he was not licensed as such.
After completion of the investigation, filing of a complaint by the Department, giving of notice of hearing, and hearing before a hearing examiner at which both Trout and the Department were represented in person and by counsel, the hearing examiner made proposed findings of fact, conclusions of law and order dated May 28,1986. The Commissioner reviewed the same and in turn made extensive findings of fact, conclusions of law and order dated July 16, 1986. The Commissioner concluded that Trout had violated the statutes in a number of respects and by order revoked his non-resident license for twelve months and also ordered that he pay an administrative fine of $2,500 to the office of the Commissioner.
Trout then commenced the present action in which he alleged that Andrea Bennett individually and as Commissioner had violated various of his constitutional rights and caused damages to him. He sought a reversal of the Commissioner’s order of July 16, 1986, with regard to the statutory violations and fine, and also requested a reversal of his license suspension. By the same complaint Trout claimed damages on various theories -under 42 U.S.C. § 1983, and also a denial of constitutional rights by reason of the requirement of taking down a sign and ceasing the selling of insurance in Montana, as well as other constitutional tort theories. The District Court entered an order bifurcating the causes of action covered by the complaint.
As the first part of the bifurcation, the District Court considered the appeal from the order of the Commissioner. The District Court considered the matter under § 33-1-711(4), MCA, which provides that *420 upon receipt of the transcript and evidence, the District Court shall hear the matter and following hearing, that the District Court is to consider the evidence contained in the transcript, exhibits and documents together with such other additional evidence as may be offered by either party. Proceeding under that authority, the District Court reconsidered the evidence and made new findings of fact and conclusions of law. The District Court reversed the determination of the Commissioner in a number of respects which are not involved in this appeal. By its orders dated August 25, 1989, and January 31, 1990, the District Court concluded that Trout had violated § 33-17-201(4), MCA (1985), by placing business with John Alden Life Insurance Company before he held an appointment issued by the Commissioner, and fined Trout $250 for the offense; and also concluded that Trout violated § 33-18-203, MCA, by advertising himself as ’’Trout Insurance Agency” and fined Trout $250 for that violation. The District Court specifically reversed the Commissioner with regard to the suspension of his license and allowed Trout to continue to sell insurance without interruption, and also reversed the $2500 fine.
As the second step in the bifurcation process, on May 30,1990, the District Court ruled on the motion for summary judgment made by Andrea Bennett, individually and as Commissioner. The District Court first concluded that the Commissioner was not a “person” under 42 U.S.C. § 1983, and granted summary judgment in the Commissioner’s favor on § 1983 claims. The District Court concluded that Will v. Michigan Dept. of State Police (1989), 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45, was controlling. The District Court stated:
Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.45 (1989), decided after Trout filed his amended complaint, disposes of this issue. 42 U.S.C., Section 1983, the provision under which Trout seeks monetary damages, provides that any “person” acting under color of state law, who violates another’s constitutional rights is liable to the injured party. Will affirmed a Michigan Supreme Court decision which held that neither a state nor a state official acting in his or her official capacity is a “person” under 42 U.S.C., Section 1983. Id. at 72,109 S.Ct. at 2312, 105 L.Ed. at 58.
... Clearly Will holds that “a [section 1983] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official’s office.” Will concluded that *421 neither the states nor state officials are “persons” subject to suit under Section 1983. Although Trout alleges in his amended complaint that certain statutes are unconstitutional, the constitutional counts in the amended complaint rely exclusively on 42 U.S.C., Section 1983 for relief, and do not request declaratory or injunctive relief. Summary judgment, dismissing both [Andrea Bennett] personally and the Office of State Auditor and Ex Officio Commissioner of Insurance on the counts alleging constitutional violations, is therefore proper.
The District Court cited Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173, and concluded that the Commissioner was quasi-judicially immune from suit on the remaining counts and granted the Commissioner’s motion for summary judgment on those counts. As a result, the District Court dismissed the Commissioner individually and as State Auditor and Ex Officio Commissioner of Insurance, with prejudice.
Trout brings this appeal from both parts of the bifurcated proceeding.
I
Did Trout violate § 33-17-201(4), MCA (1985)?
Section 33-17-201(4), MCA (1985) provided: “No agent shall place any business, other than coverage of his own risks, with any insurer as to which he does not then hold an appointment or license as agent under this chapter ....”
Trout was fined $250 for violating § 33-17-201(4), MCA (1985), by placing business with John Alden Life Insurance Company before he held an appointment to do so issued by the Commissioner. The District Court found that Trout requested John Alden Life Insurance Company to appoint him as a non-resident agent in Montana. The District Court found that Trout solicited insurance business prior to receiving a validated appointment from that company as was required by the Commissioner. The record contains substantial evidence to support that finding.
We affirm the conclusion of the District Court in holding that Trout did violate § 33-17-201(4), MCA (1985).
II
Did Trout violate § 33-18-203, MCA?
Section 33-18-203, MCA, provides:
*422 No person shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine, or other publication or in the form of a notice, circular, pamphlet, letter, or poster or over any radio or television station or in any other way, an advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive, or misleading. (Emphasis added).
Trout maintains that he never advertised as an “agency.” He contends that his Billings phone book listings as “Trout Jim Insurance” and “Trout Insurance” did not represent an agency. As the Commissioner pointed out, and as found by the District Court, Trout alleged the following in his Amended Complaint:
12. Trout registered an assumed name, “Trout Insurance Agency,” with the Montana Secretary of State on January 21, 1985. Thereafter he ordered and used stationery with the name Trout Insurance Agency and the address of his Billings office for correspondence relating to his insurance sales in Montana .... (Emphasis added).
The District Court further concluded that Trout had signed a restriction letter which indicated that the license was issued to him as an individual, but that Trout had represented himself as an agent. We conclude there is substantial evidence to support the findings of the District Court. We affirm the holding that Trout violated § 33-18-203, MCA.
Ill
Is Andrea Bennett, individually and as Commissioner, immune from § 1983 claims?
Title 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an *423 action at law, suit in equity, or other proper proceeding for redress ....
Trout points to the reliance of the District Court on the Will case, as above described, and argues that Will applies only to those claims against Andrea Bennett in her “official capacity.” He further argues that Will provides no protection for claims against her in her “personal capacity.” Trout concedes that under Will, Andrea Bennett is immune in her official capacity from the § 1983 claims against her. Trout’s argument is further emphasized in his special brief regarding the case of Hafer v. Melo (1991), _ U.S. _, 112 S.Ct. 358, 116 L.Ed.2d 301, which was decided on November 5, 1991.
Andrea Bennett contends that she was acting within the scope of her official duties and employment. She maintains that under Will, neither a state nor a state official acting in his or her official capacity is a “person” under § 1983. Andrea Bennett further contends that Hafer has no bearing on the outcome of this case. We disagree.
Because Hafer is dispositive of this issue, we will discuss it at some length. Hafer sought election as Auditor General of Pennsylvania. During the campaign she was given a list of names of persons who allegedly secured their jobs in the Auditor General’s office through payments to former employees. Shortly after becoming Auditor General she dismissed eighteen employees. Eight of those employees sued Hafer in Federal District Court asserting a claim under 42 U.S.C. § 1983. Other respondents also sought damages because they alleged they had been discharged because of their political affiliation and support for Hafer’s opponent. The United States Supreme Court granted certiorari “to address the question whether state officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities.” The United States Supreme Court discussed at some length the comparison between official capacity suits and personal capacity suits. The court pointed out that personal capacity suits seek to impose individual liability for actions under color of state law, and as a result it is sufficient to establish personal liability under § 1983 by showing that an official acted under color of state law and caused deprivation of a federal right. The court pointed out how this is specifically covered by the above quoted definition from § 1983.
In discussing the distinction further, the Supreme Court pointed out that state officials sued in their official capacities are not persons for purposes of suit because they assume the identity of the *424 government which employs them. By contrast, officers sued in their personal capacity come to court as individuals, so that a government official in the role of a personal capacity defendant fits comfortably within the above statutory term “person.” At this point the court pointed out that Hafer attempted to argue that the distinction turned upon the capacity in which the state official was acting when the plaintiff was injured. The court refused to accept this theory, pointing out that the requirement of action under state law means that Hafer may be liable for discharging respondents precisely because of her authority as Auditor General. Hafer also argued there was a distinction as to acts taken under color of state law, claiming that such actions were immune. Again the court found no support in the broad language of § 1983.
The court emphasized that it has in the past refused to extend absolute immunity beyond a very limited class of officials, including the President, legislators carrying out their legislative functions, and judges carrying out their judicial functions, “whose special functions or constitutional status requires complete protection from suit.” Hafer, 112 S.Ct. at 364. In support of that conclusion, the Supreme Court stated: “State executive officials are not entitled to absolute immunity for their official actions. Scheuer v. Rhodes, supra.” Id. at 364. Hafer further contended that under Will, there should not be recovery because the Eleventh Amendment bars suits in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury. In discussing this issue, the Supreme Court stated:
“[S]ince Exparte Young, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908),” we said “It has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law.”... While the doctrine of Ex parte Young does not apply where a plaintiff seeks damages from public treasury, damages awards against individual defendants in federal courts “are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.” ... That is, the Eleventh Amendment does not erect a barrier against suits to impose “individual and personal liability” on state officials under § 1983.
Hafer, 112 S.Ct. at 364.
After such an extensive discussion, the Court unanimously held:
*425 We hold that state officials, sued in their individual capacities are “persons” within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the “official” nature of their acts.
Hafer 112 S.Ct. at 365.
In connection with the holding in Hafer, we point out that the amended complaint in the present case named Andrea H. Bennett, as an individual and as State Auditor and Ex Officio Commissioner of Insurance in the title, and also alleged the following in the complaint: “This action is brought against this Defendant in her official and personal capacities.”
We conclude that under Hafer, which had not been decided at the time of the summary judgment by the District Court, the District Court’s interpretation of Will as holding that neither states nor state officials are “persons” subject to suit under § 1983, must be reversed. We hold that under the United States Supreme Court decision in Hafer, Andrea Bennett, State Auditor and Commissioner of Insurance of Montana was sued by Trout in her individual capacity and as a result can be classified as a “person” within the meaning of § 1983, and that as such a state officer, Andrea Bennett is not absolutely immune from personal liability under § 1983 solely by virtue of the “official” nature of her acts. We reverse the District Court on this issue and remand for further proceedings consistent with this opinion.
IV
Does the doctrine of quasi-judicial immunity render Andrea Bennett, individually and as Commissioner, immune from suit under state law as to the remaining claims?
Trout concedes that the doctrine of quasi-judicial immunity protects the Commissioner from her actions in filing charges against him, the holding of the administrative hearing, and the ultimate decision finding him to have violated various code provisions. However, he argues that a distinction must be made between these quasi-judicial functions, and the actions in behalf of the Commissioner prior to the filing of the administrative charges. In particular, he urges that the actions of the Commissioner through her agent, Dan McGowan, in ordering him to remove his sign from his Billings office and requiring that he cease the sale of insurance in Montana under his non-resident license, clearly violated his constitutional rights to *426 due process, equal protection, freedom to travel and free speech. While Trout might agree that the investigation made in order to provide a basis for the filing of charges was quasi-judicial in nature, he contends a distinction must be made with regard to the actions which essentially forced him out of business. He argues that this issue involves questions of fact which preclude summary judgment on the issue.
In State [ex rel. Div. of Work. Comp.] v. District Court [of the 13th Jud. Dist.] (1990), 246 Mont. 225, 805 P.2d 1272, this Court addressed the issue of whether the State and the Division of Workers’ Compensation are protected by quasi-judicial immunity for their admitted negligence in renewing the privilege of an employer to self-insure under the Workers’ Compensation Law. This Court held that the nature of the functions performed were central to the determination of the issue, and stated: “For immunity to apply the function of the Division must be quasi-judicial rather than administrative or ministerial.”
State v. District Court, [246 Mont. 225,] 805 P.2d at 1274. Furthermore, the Court provided the following definitions:
Quasi-judicial functions are those which lie midway between the judicial and ministerial ones. The lines separating them from such ... are necessarily indistinct; but, in general terms, when the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed quasi-judicial.
In the same line, a ministerial act has also been defined as an act performed in a prescribed legal manner, in obedience to the law or the mandate of legal authority, without regard to, or the exercise of, the judgment of the individual upon the propriety of the acts being done.
Id. at 1275. In distinguishing State v. District Court from Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173, we looked at the definition of quasi-judicial function found in § 2-15-102(10), MCA:
“Quasi-judicial function” means an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies ....
The Court stated:
*427 The case before us is distinguishable from Koppen. In Koppen, the Board allegedly failed to respond to complaints, adversarial in nature, that it received regarding a physician’s fitness to practice medicine and to take remedial action. We noted that the action or inaction by the Board in Koppen was its decision not to revoke or limit the physician’s license or initiate such action when faced with complaints concerning his professional conduct. There was no allegation that the Board failed to even consider the complaints.
Here, we first note that there is no controversy from the outset as in Koppen. The facts merely involve the filing of an application rather than an adversarial setting involving a dispute or controversy. We conclude that immunity does not attach because the Division is not expressly designated a quasi-judicial board, see § 2-15-124, MCA, see generally Title 2, Chapter 15, MCA, nor was it performing a quasi-judicial function ... (Citations Omitted). (Emphasis in original.)
Id. at 1275.
In pertinent part § 2-15-102(10), MCA, provides:
(10) “Quasi-judicial function” means an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. The term includes but is not limited to the functions of interpreting, applying, and enforcing existing rules and laws granting or denying privileges, rights, or benefits; issuing, suspending, or revoking licenses, permits, and certificates; determining rights and interests of adverse parties; evaluating and passing on facts; awarding compensation; fixing prices; ordering action or abatement of action; adopting procedural rules; holding hearings; and any other act necessary to the performance of a quasi-judicial function.
On the question of whether or not an investigation by the Commissioner’s office should be classed as quasi-judicial in nature, the case of Gerber v. Commissioner of Ins. (1990), 242 Mont. 369, 786 P.2d 1199, is controlling:
As a discretionary function, the Insurance Commissioner’s conduct of an investigation based on a consumer’s complaint against an insurer is protected by quasi-judicial immunity.
As a result, the investigation of Trout clearly is protected by quasi-judicial immunity.
*428 The narrow issue which concerns us does not involve the investigation itself. The issue is whether the agent of the Commissioner properly required Trout to remove his sign and stop the sale of insurance. Our review of the 1985 sections of Montana Code Annotated which applied to these particular actions does not disclose any statutory provision granting authority to the Commissioner or any agent of the Commissioner to require an agent or insurance producer to take down a sign in the manner alleged by Trout, or requiring an agent or producer to close down his office so far as the sale of insurance is concerned, as again is alleged by Trout. The record before us on this aspect is both confusing and incomplete so that we are not able to determine the specific actions which were alleged to have occurred on the part of Dan McGowan in behalf of the Commissioner.
We therefore conclude there is a remaining issue of material fact which precludes summary judgment with regard to the alleged conduct of the required taking down of the Trout sign and the closing of Trout Insurance. We conclude it is appropriate to reverse the District Court on this narrow specific issue.
In addition Trout claims that he suffered damages by reason of the notification of various insurance companies of his suspension in derogation of the automatic stay provision under § 33-1-711(2), MCA, which in 1985 read:
(2) Upon filing of the notice of appeal therein, the court shall have full juris diction and shall determine whether such filing shall operate as a stay of the order or action appealed from, except that in the following instances the filing of the notice of appeal shall automatically stay the order appealed from pending the judgment of the district court on the appeal:
(a) appeal from suspension or revocation of the license of an agent, solicitor, or surplus line agent; (Emphasis added.)
Again the record is inadequate for us to determine the precise steps which were taken. Again it appears there is an issue of material fact which precluded summary judgment on this narrow aspect as well.
We therefore hold that summary judgment is reversed with regard to the claim of quasi-judicial immunity as to the alleged removal of the sign, closing of the insurance business, and alleged improper notification of insurance companies in light of the automatic stay provided for in § 33-1-711(2), MCA (1985). We remand on these *429 specific issues for further proceedings by the District Court consistent with this opinion.
V
Did the District Court err in failing to rule on Trout’s motion to file a second amended complaint?
Rule 15(a), M.R.Civ.P., provides that after a responsive pleading has been served, a party may amend his pleading only by leave of court or by written consent of the adverse party, and that “leave shall be freely given when justice so requires.” Trout filed his motion to amend his complaint after summary judgment was entered against him. However, we note that he failed to provide any basis for such an amendment. Instead, his motion consisted of a one sentence request to amend without any explanation of why he wished to do so. We conclude that there was no abuse of discretion on the part of the District Court in denying Trout’s motion to amend and hold that such a denial was proper.
We affirm the District Court on Issues I, II, and V. We reverse the District Court on Issue III regarding the § 1983 claims, and on the specified narrow issues under Issue IV, and remand for further proceedings consistent with this opinion.
CHIEF JUSTICE TURNAGE and JUSTICES HARRISON, GRAY and McDONOUGH concur.