No. 99-091

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 9

298 Mont 28

993 P.2d 680

SANDRA RAHRER,

Plaintiff and Appellant,

v.

BOARD OF PSYCHOLOGISTS,

Department of Commerce,

State of Montana,

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael G. Alterowitz and Monte Jewell, Alterowitz Law Offices, P.C.;

Missoula, Montana

For Respondent:

G. Curtis Drake, Keller, Reynolds, Drake, Johnson & Gillespie, P.C.;

Helena, Montana

Submitted on Briefs: August 19, 1999

Decided: January 13, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1.Dr. Sandra Rahrer filed an action against the Board of Psychologists, the Department of Commerce, and the State of Montana (hereinafter referred to collectively as "Board") in the Fourth Judicial District, Missoula County, for damages arising out of a contested case hearing. The District Court issued an order changing venue to the First Judicial District, Lewis and Clark County. The Board moved for and was granted summary judgment. Rahrer appeals. We affirm.

¶2.Rahrer raises the following issues on appeal:

¶3. Whether the District Court erred in concluding that the Board of Psychologists, Department of Commerce, and the State were immune from suit for causes of action arising out of a contested case hearing?

1. ¶4. Whether the District Court erred in concluding that the Board was not liable as a complaining party under § 37-1-308(2), MCA?

2. ¶5. Whether the District Court erred in concluding that Rahrer's claim for attorney fees was premature?

## FACTUAL BACKGROUND

¶6.Rahrer is a psychologist licensed by the Department of Commerce, Board of Psychologists. From May 1993 to March 1994 Rahrer treated a three-year-old child whose parents were involved in a divorce. An attorney representing the child's mother asked Rahrer to prepare a report concerning her treatment of the child to be used by the child's mother in a visitation settlement proceeding.

¶7.On June 6, 1994, the Board of Psychologists received a complaint concerning that report. The Board of Psychologists issued a Notice of Proposed Board Action and Opportunity for Administrative Hearing on May 19, 1995. Rahrer requested a hearing. A contested case hearing was held on June 3-5, 1996, after which the hearing examiner concluded that the Board of Psychologists had failed to prove that Rahrer had violated any of the Board's rules of conduct.

¶8.Rahrer requested an award of attorney fees incurred as a result of the contested case hearing. The hearing examiner observed that the Board failed to exercise "appropriate caution" in evaluating the complaint and the Board's investigation of the complaint was "grossly inadequate." However, he recommended that the Board deny Rahrer's request for attorney fees because the failure to dismiss her case before the contested case hearing was not unreasonable.

¶9.On November 18, 1996, Rahrer filed a petition for judicial review in the Fourth Judicial District Court, Missoula County, in which she again sought attorney fees she had incurred as a result of the contested case hearing. On May 16, 1997, Rahrer filed a separate action in the Fourth Judicial District Court, Missoula County, seeking damages and attorney fees. By stipulation, Rahrer's petition for judicial review was stayed pending the outcome of her second action. Pursuant to another stipulation of the parties, the District Court changed the venue for Rahrer's second action to the First Judicial District Court, Lewis and Clark County. The Board moved for summary judgment on May 1, 1998. In an order dated November 16, 1998, the District Court of Lewis and Clark County granted summary judgment in favor of the Board. Rahrer appeals from this order.

## ISSUE 1

¶10. Whether the District Court erred in concluding that the Board of Psychologists, Department of Commerce, and the State were immune from suit for causes of action arising out of a contested case hearing?

¶11. Article II, Section 18 of the Montana Constitution provides:

**State Subject to Suit. The state, counties, cities, towns, and all other local government entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.**

In its comments accompanying the proposed text of Section 18, the Bill of Rights Committee of the 1972 Constitutional Convention stated that its purpose was to abolish "the archaic doctrine of sovereign immunity." Montana Constitutional Convention, Vol. II at 637. By "sovereign immunity," the Committee meant the legal doctrine which "bars tort suits against the state for negligent acts by its officials and employees." Montana Constitutional Convention, Vol. II at 637. The Committee further stated that "all parties should receive fair and just redress whether the injuring party is a private citizen or a government agency." Montana Constitutional Convention, Vol. II at 637.

¶12. We have held that Article II, Section 18 abolished the doctrine of sovereign immunity. *See Noll v. City of Bozeman* (1975), 166 Mont. 504, 534 P.2d 880. However, we have also held that other immunities, separate and distinct from sovereign immunity, were not affected by the adoption of Article II, Section 18. *See State ex rel. Dept. of Justice v. District Court* (1976), 172 Mont. 88, 560 P.2d 1328. The plaintiffs in *Department of Justice* filed separate complaints against the Attorney General, the Department of Justice, and the State of Montana, among others, alleging that the defendants had acted maliciously and negligently in filing criminal charges against them. The defendants sought a writ of supervisory control, which we granted, directing the District Court to dismiss the complaints. In granting the writ, we held that Article II, Section 18 did not abolish the common law doctrine of prosecutorial immunity. *Department of Justice*, 172 Mont. at 92, 560 P.2d at 1330.

¶13. In concluding that all of the defendants were immune, we extended the doctrine of prosecutorial immunity to cover not only the personal liability of prosecutors, but also the vicarious liability of the State and the Department of Justice. *Department of Justice*, 172 Mont. at 93, 560 P.2d at 1330. We justified this extension on public policy grounds: the objectives sought by granting immunity to individual officers-free, independent, and

untrammeled action-would be seriously impaired or destroyed if we did not extend immunity to the state and its agencies. *Department of Justice*, 172 Mont. at 92-93, 560 P.2d at 1330 (citing *Creelman v. Svenning* (Wash. 1966), 410 P.2d 606, 608).

¶14.In *Koppen v. Board of Medical Examiners* (1988), 233 Mont. 214, 759 P.2d 173, we recognized the common-law doctrine of "quasi-judicial" immunity as a "logical descendent of prosecutorial immunity" and extended absolute immunity to the State and its executive agencies not involved in the criminal justice process. *Koppen*, 233 Mont. at 219, 759 P.2d at 176. The plaintiffs in *Koppen* filed suit against the Board of Medical Examiners and the State alleging that the Board was negligent in failing to limit or revoke the license of their physician, Dr. Kaufman. The plaintiffs claimed that the Board had received complaints about Dr. Kaufman's fitness to practice medicine, but had failed to respond to those complaints. We affirmed the dismissal of their suit, holding that the Board and the State were immune from suit under the doctrine of quasi-judicial immunity.

¶15.In recognizing the quasi-judicial immunity of the Board and the State, we cited with approval *Butz v. Economou* (1978), 438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 2d 895. The plaintiff in *Butz* had brought various causes of action against federal officials in the Department of Agriculture arising out of an administrative complaint proceeding. The U. S. Supreme Court held that executive officials performing functions analogous to those of a judge and a prosecutor-e.g., initiating, presenting, and adjudicating cases-were absolutely immune from suit. The Court concluded that, in light of the many safeguards which checked their actions, the benefits of immunity for agency officials functioning in adjudicatory capacities, such as maintaining their independent judgment and enabling them to adjudicate cases on the basis of a complete record, outweighed the risk that they would act unconstitutionally. *Butz,* 438 U.S. at 512-17, 98 S. Ct. at 2914-16.

¶16.Applying the doctrine of quasi-judicial immunity in *Koppen*, we observed that "the discretion vested in the Board to weigh the information relative to Dr. Kaufman rendered it a quasi-judicial body." *Koppen*, 233 Mont. at 219, 759 P.2d at 176. In this regard, we noted that, similar to the individual defendants in *Butz,* the Board's action was subject to safeguards such as the notice and hearing requirements of the Montana Administrative Procedure Act as well as judicial review. *Koppen*, 233 Mont. at 219, 759 P.2d at 176. We concluded that because the Board was performing a quasi-judicial function, the Board was absolutely immune from claims arising out of its inaction. *Koppen*, 233 Mont. at 219, 759 P.2d at 176.

¶17. In subsequent opinions, we have clarified our holding in *Koppen*. In *State ex rel. Division of Workers' Compensation v. District Court* (1990), 246 Mont. 225, 805 P.2d 1272, we held that the State and the Division of Workers' Compensation were not immune from suit for their admitted negligence in renewing the privilege of an employer to self-insure because renewing the self-insurance status of an employer was not a discretionary quasi-judicial act. *Division of Workers' Compensation,* 246 Mont. at 228-34, 805 P.2d at 1274-78. In *State Board of Dentistry v. Kandarian* (1991), 248 Mont. 444, 813 P.2d 409, we held that the Board of Dentistry was not immune from a tort suit arising out of its decision to seek an injunction against a nonlicensee because, unlike a prosecutor, the Board's decision was not checked by procedural safeguards such as probable cause investigation, notice, and swearing under oath. *Kandarian*, 248 Mont. at 448, 813 P.2d at 412. In *Newville v. State Department of Family Services* (1994), 267 Mont. 237, 883 P.2d 793, we held that the Department of Family Services was not immune from a suit arising out if its acts of approval for adoption, foster placement, and investigation of child abuse reports because those acts were not part of a contested case hearing or other adversarial process. *Newville*, 267 Mont. at 269, 883 P.2d at 812.

¶18. Rahrer asserts that the Board is not entitled to act recklessly in investigating a complaint, persist in investigating baseless allegations, and fail to provide its witnesses with adequate information in a contested case hearing. Rahrer claims that these are examples of the negligent performance of ministerial duties for which state agencies have not been granted immunity under our decision in *Division of Workers' Compensation*. The District Court concluded that the Board was immune from suit for actions arising out of a contested case hearing held pursuant to the Montana Administrative Procedure Act.

¶19. Rahrer's reliance on *Division of Workers' Compensation* is based on a misunderstanding of that opinion. In *Division of Workers' Compensation*, we held that the Division was not entitled to immunity for its negligent processing of an employer's request for self-insured status because the Division had failed to undertake a mandatory review and the Division was not acting in a quasi-judicial capacity. *Division of Workers' Compensation*, 246 Mont. at 230-32, 805 P.2d at 1276-77. Pursuant to the administrative rules governing self-insured election, the Division could only grant self-insured status to employers who demonstrated financial stability. *Division of Workers' Compensation,* 246 Mont. at 232, 805 P.2d at 1277. However, the Division had failed to determine whether the employer was eligible before granting the employer self-insured status. More significantly, in approving applications for self-insurance, the Division was not acting in a quasi-judicial capacity. The failure of the Division to adequately review the employer's

application for self-insurance status did not take place during an adversarial resolution of a dispute or controversy. *Division of Workers' Compensation,* 246 Mont. at 230, 805 P.2d at 1276.

¶20.The actions of the Board at issue here are not analogous to the actions complained of in *Division of Workers' Compensation*. The actions of the Board in determining whether to pursue the complaint against Rahrer, how to investigate that complaint, and how to prepare its witnesses for a hearing on that complaint are clearly the result of discretionary decisions made during the adjudication of a dispute or controversy. We note that under § 37-17-202(2)(b), MCA, the Board "may conduct hearings upon complaints." Moreover, there is no dispute that the decisions complained of took place in the context of a contested case hearing under the Montana Administrative Procedure Act. Initiating, investigating, and presenting a case pursuant to the Montana Administrative Procedure Act involves precisely the types of decisions for which we have granted the state and its agencies quasi-judicial immunity under *Koppen*. Accordingly, we hold that the District Court did not err in concluding that the Board was entitled to quasi-judicial immunity.

## ISSUE 2

¶21.Whether the District Court erred in concluding that the Board was not liable as a complaining party under § 37-1-308(2), MCA?

¶22.Under § 37-1-308(1), MCA, a person, government, or private entity may submit a written complaint to the Board. Section 37-1-308(2), MCA, provides that "[a] person or private entity, but not a government entity, filing a complaint under this section in good faith is immune from suit in a civil action related to the filing or contents of the complaint."

¶23.Rahrer asserts that the Board is liable under § 37-1-308(2), MCA. Although Rahrer concedes that the Board did not file the complaint, Rahrer insists that the Board assumed the role of complainant by continuing to pursue the complaint after "it was apparent that the complaint lacked any basis in law or fact." The District Court granted summary judgment in favor of the Board.

¶24.Assuming, arguendo, that § 37-1-308(2), MCA, creates a cause of action against a government entity, it is clear that it would be limited to government entities that file complaints in bad faith. Rahrer concedes that the Board did not file a complaint against her. It is also clear that a cause of action under § 37-1-308(2), MCA, would be limited to

actions related to the filing or contents of a complaint. Rahrer has not asserted a cause of action related to either the filing or the contents of the complaint. Instead, she is claiming that the Board is liable for continuing to pursue the complaint. Accordingly, we conclude that the Board is not liable under § 37-1-308(1), MCA.

## ISSUE 3

¶25. Whether the District Court erred in concluding that Rahrer's claim for attorney fees was premature?

¶26. Rahrer has sought attorney fees and costs incurred in her defense of the contested case hearing in a separate action before the Fourth Judicial District Court, Missoula County. In an order dated February 6, 1997, the District Court in the aforementioned matter stayed the proceedings pending the resolution of the claims which are now before us. Accordingly, we agree with the District Court that Rahrer's claim for attorney fees and costs should be pursued in connection with her pending action in Missoula County. Upon removal of the stay in the Fourth Judicial District, Rahrer will be free to pursue her claim against the Board for attorney fees and costs.

¶27. Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson specially concurs.

¶28. I concur with our decision as to Issues 2 and 3. I concur in our opinion as to Issue 1 because the trial court and this Court have correctly applied the doctrine of quasi-judicial immunity as created by and recognized in our case law. That is not to say, however, that I agree with that jurisprudence. In point of fact, I do not. In my view our creation of the doctrine of quasi-judicial immunity is in direct violation of Article II, Section 18 of the

Montana Constitution which abolished governmental immunity from suit absent a 2/3 vote of the legislature. *See Koppen v. Board of Medical Examiners* (1988), 233 Mont. 214, 220-24, 759 P.2d 173, 176-79 (Sheehy, J., concurring and dissenting); *Trout v. Bennett* (1992), 252 Mont. 416, 431-32, 830 P.2d 81, 90 (Trieweiler, J., concurring and dissenting).

¶29.Article II, Section 18 of the Montana Constitution provides:

The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

We have held that although this provision abolished sovereign immunity, it did not abolish "prosecutorial immunity." *Dept. of Justice v. District Court* (1976), 172 Mont. 88, 92, 560 P.2d 1328, 1330 (hereinafter "*DOJ*") (holding that prosecutors acting within the scope of their duties are "absolutely immune" from civil liability). However, we did not limit prosecutorial immunity to public employees, but rather we extended it to the Department of Justice and the State. *DOJ*, 172 Mont. at 92, 560 P.2d at 1330.

¶30.Our extension of prosecutorial immunity to public entities appears to be directly at odds with both the express language and the purpose of Section 18. Presumably, because we held that common-law prosecutorial immunity was not waived by Section 18, we were free to exercise our common-law powers to extend it to governmental agencies. In doing so, we referred to *Creelman v. Svenning* (Wash. 1966), 410 P.2d 606, in which the Washington Supreme Court stated:

*The public policy which requires immunity for the prosecuting attorney, also requires immunity for both the state and the county for acts of judicial and quasi-judicial officers* in the performance of the duties which rest upon them; otherwise, the objectives sought by immunity to the individual officers would be seriously impaired or destroyed.

*Creelman, 410 P.2d at 608 (emphasis added).*

¶31.In *Koppen*, we concluded that the doctrine of quasi-judicial immunity (a "logical descendant of prosecutorial immunity") precluded a suit for tort damages against the Board of Medical Examiners and the State. *Koppen*, 233 Mont at 219-20, 759 P.2d at 176. In *Koppen*, the District Court had held that the Board was immune under § 2-9-112, MCA, which grants immunity to the State and other governmental units from acts of the

judiciary. Section 2-9-112, MCA, provides, "judiciary *includes* those courts established in accordance with Article VII of The Constitution of the State of Montana." (Emphasis added.) The District Court inferred that by using the word "includes," the legislature had intended to grant immunity to administrative agencies exercising quasi-judicial authority.

¶32.On appeal, we affirmed the District Court's conclusion that the Board and the State were immune from suit, but on different grounds. Citing *DOJ,* we held that Section 18 only abolished sovereign immunity, which is separate and distinct from prosecutorial or quasi-judicial immunity. In doing so, we observed:

The Bill of Rights Committee of the 1972 Constitutional Convention stated in its Comments accompanying the proposed text of Section 18 that its purpose was to abolish "the archaic doctrine of sovereign immunity." 2 Mt. Leg. Council, *Montana Constitutional Convention, 1971-72*, 637. In reporting Section 18 to the full convention for approval, Delegate Murray of the Bill of Rights Committee stated, "We feel that the doctrine of sovereign immunity, which we are attempting to do away with by this particular provision, really means that the king can do whatever he wants but he doesn't have to pay for it; and we'd like to do away with that doctrine." 5 Mt. Leg. Council, *Montana Constitutional Convention, 1971-72*, 1760.

*Koppen, 233 Mont. at 218, 759 P.2d at 175. We then cited Butz v. Economou (1978), 438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 2d. 895, for the proposition that the imposition of liability would "distort" the Board's exercise of its discretion when fulfilling its quasi-judicial role. Koppen, 233 Mont. at 219, 759 P.2d at 176.*

¶33.In dissent, Justice Sheehy, joined by Justice Hunt, noted that the *Butz* court was deciding the personal liability of government agents not the liability of the government itself. *Koppen,* 233 Mont. at 222, 759 P.2d at 178. Justice Sheehy observed that § 2-9-305 (1), MCA, already immunizes public employees from civil liability for their actions taken within the course and scope of their employment. Justice Sheehy stated:

[T]he liability of the state here should be decided on principles other than cases [such as *Butz*] applying only to personal liability. Here, the state, by constitution and by statute, is not immune from suit. The state is liable to persons who suffer injuries proximately caused by state governmental torts as a matter of public policy and as a constitutional right.

It is, therefore, quite illogical for the majority to hold that the state is exempt from suit in this case because of the possibility that the Board's discretion would be subject to

distortion by considerations of possible litigation against the state arising from the actions of the Board of Medical Examiners. The state, without question, has accepted that risk in assuming liability, and in subjecting itself to suit.[1]

*Koppen*, 233 Mont. at 223, 759 P.2d at 178-79.[2]

¶34.Exercising our authority to expound on the common-law principle of quasi-judicial immunity, we have held that agencies are not absolutely immune from tort claims. In order to invoke quasi-judicial immunity, an agency must have been performing a quasi-judicial function as opposed to a purely ministerial task. *See State ex rel. Workers' Comp. v. District Court* (1990), 246 Mont. 225, 805 P.2d 1272. A public agency cannot invoke quasi-judicial immunity if it put itself in the role of litigant or advocate and not adjudicator. *See State, Bd. of Dentistry v. Kandarian* (1991), 248 Mont. 444, 448, 813 P.2d 409, 412 (observing that, although quasi-judicial immunity and prosecutorial immunity are doctrinally similar, agency bringing suit in district court is not checked by procedural safeguards inherent in the prosecutorial system such as probable cause investigation and swearing under oath).

¶35.There seems to be three premises for the judicial extension of immunity to agencies functioning in quasi-judicial roles: (1) prosecutorial and sovereign immunity are doctrinally distinct; (2) Section 18 only abolished sovereign immunity; and (3) the extension of prosecutorial immunity to quasi-judicial state entities reflects sound policy. *See DOJ*, 172 Mont. at 92-93, 560 P.2d at 1330. I will examine each of these premises, in turn.

¶36.*Prosecutorial immunity and sovereign immunity are "different concepts and are supported by different considerations of public policy." DOJ*, 172 Mont. at 92, 560 P.2d at 1330. Unfortunately, the *DOJ* court did not analyze this distinction, nor did it point to any authorities. The doctrine of sovereign immunity is comprised of two separate principles. The first principle is that a state is immune from suit in its own courts without its consent. *See, e.g., Peretti v. State* (1989), 238 Mont. 239, 777 P.2d 329. The second principle is that a state is immune from liability for the torts committed by its officers, agents, and employees. *1 Civil Actions Against State and Local Governments* § 1.1 (Jon L. Craig ed., 2nd ed. 1992).

¶37.Several fundamental purposes are served by the doctrine of sovereign immunity. Sovereign immunity shields the state from the burden of defending lawsuits, protects the

state treasury, protects the operation of government from interference by the judiciary and private citizens, and permits governmental officials to exercise discretion in carrying out their responsibilities. *Civil Actions,* § 1.2 .

¶38.A theory of official personal immunity also exists. "Whether based on common law or statute, the general rule is that public officials acting within the scope of their authority are absolutely immune from tort liability for exercising judicial or legislative functions [and] enjoy a qualified immunity from tort liability for exercising executive or administrative functions." *Civil Actions*, § 4.1. "The doctrine of official immunity rests on the public policy consideration that effective government requires officers and employees who are free to act independently, without deterrence and intimidation by the threat of personal liability and vexatious lawsuits." *Civil Actions*, § 4.2.

¶39.It appears that official ("prosecutorial" or "quasi-judicial") personal immunity is doctrinally distinct from sovereign immunity--the latter immunity protects state entities, while the former protects state officers personally. Here, sovereign immunity being applicable to the Board as a state entity, quasi-judicial immunity should not apply to protect it from Rahrer's suit.

¶40.*Article II, Section 18 of the Montana Constitution did not abolish prosecutorial immunity. DOJ*, 172 Mont. at 92, 560 P.2d at 1330. Section 18 specifically states that "[t]he *state, counties, cities, towns, and all other local governmental entities* shall have no immunity from suit." (Emphasis added.) The Bill of Rights Committee of the 1972 Constitutional Convention stated in its comments accompanying the proposed text of Section 18 that its purpose was to abolish "the archaic doctrine of sovereign immunity." Montana Constitutional Convention, Committee Proposals, Vol. II at 637 (hereinafter "*Proposals*"). By sovereign immunity, the Committee meant the doctrine which "bars tort suits against the state for negligent acts by its officials and employees." *Proposals*, at 637. The Committee stated that "all parties should receive fair and just redress whether the injuring party is a private citizen or *a governmental agency*." *Proposals*, at 637 (emphasis added).

¶41.The conclusion that Section 18 only abrogated sovereign immunity is probably correct and does correspond with the language of this Section. The Committee did not claim that Section 18 would abrogate any pre-existing common-law personal immunities for public officials or employees. However, we have made an end-run around Section 18 by extending theories of personal immunity (e.g., prosecutorial or quasi-judicial immunity) to

state entities. Again, as noted above, the Board, as a state entity is not protected by personal, quasi-judicial immunity; it is covered by sovereign immunity which has been abrogated by Section 18.

¶42. *The extension of prosecutorial immunity to quasi-judicial state entities reflects sound policy. See DOJ*, 172 Mont. at 92-93, 560 P.2d at 1330. The underlying assumption of this premise is that this Court has the authority to extend prosecutorial or quasi-judicial immunity to state entities. This assumption is highly questionable given the language of Section 18. As discussed above, Section 18 waives the immunity of state entities. Section 18 contains two qualifications to this general waiver: (1) the immunity is limited to suits for "injury to a person or property," and (2) the legislature is granted the authority to provide immunity to state entities by a 2/3 vote of each house. Section 18 does not expressly contain a reservation of immunity for state entities that are performing prosecutorial or quasi-judicial functions.

¶43. The assumption that this Court has the authority to extend prosecutorial immunity to state entities is also questionable given the purpose or legislative history of Section 18. The assertion that the framers of Section 18 did not intend to abrogate prosecutorial immunity might be accurate. However, it is perfectly clear that the framers did intend to do away with sovereign immunity--the doctrine which "bars tort suits against the state for negligent acts by its officials and employees." The Bill of Rights Committee unanimously voted to adopt this provision because the doctrine "no longer has a rational justification in law" and because it is "repugnant to the fundamental premise of the [sic] American justice: all parties should receive fair and just redress whether the injuring party is a private citizen or a governmental agency." *Proposals*, at 637. By extending prosecutorial or quasi-judicial immunity to state entities, this Court has frustrated the very purpose of Section 18--i.e., "bar[ring] tort suits against the state for negligent acts by its officials and employees."

¶44. Accordingly, while I agree that our opinion correctly reflects the state of the law as regards the application of quasi-judicial immunity to the Board in this case, I am also of the opinion that our jurisprudence supporting this application is fundamentally flawed and is, in fact, in violation of Article II, Section 18 of the Montana Constitution. Under the circumstances I will look forward to the case when we are accorded the opportunity to revisit this issue.

/S/ JAMES C. NELSON

Justice Terry N. Trieweiler concurs with the foregoing special concurrence.

/S/ TERRY N. TRIEWEILER

1. Although Justice Sheehy's dissent is compelling, it might have been more accurate to say that the *people of Montana*, rather than the state, have decided through the enactment of Section 18 that they would prefer to subject the state to suit at the cost of potentially "distorting" the decision making process of executive agencies.

2. *See also Trout*, 252 Mont. at 431-32, 830 P.2d at 90 (Trieweiler, J., concurring and dissenting) ("To my knowledge, the Montana Legislature has never voted to impose quasi-judicial immunity by a 2/3 vote or by any other vote. Therefore, to judicially create such immunity contravenes an express provision of the Montana Constitution. . . .").