JUSTICE NELSON
specially concurs.
¶28 I concur with our decision as to Issues 2 and 3.1 concur in our opinion as to Issue 1 because the trial court and this Court have correctly applied the doctrine of quasi-judicial immunity as created by and recognized in our case law. That is not to say, however, that I agree with that jurisprudence. In point of fact, I do not. In my view our creation of the doctrine of quasi-judicial immunity is in direct violation of Article II, Section 18 of the Montana Constitution which abolished governmental immunity from suit absent a 2/3 vote of the legislature. See Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 220-24, 759 P.2d 173, 176-79 (Sheehy, J., concurring and dissenting); Trout v. Bennett (1992), 252 Mont. 416, 431-32, 830 P.2d 81, 90 (Trieweiler, J., concurring and dissenting).
¶29 Article II, Section 18 of the Montana Constitution provides:
The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.
We have held that although this provision abolished sovereign immunity, it did not abolish “prosecutorial immunity.” Dept. of Justice v. District Court (1976), 172 Mont. 88, 92, 560 P.2d 1328, 1330 (hereinafter “DOJ’) (holding that prosecutors acting within the scope of their duties are “absolutely immune” from civil liability). However, we did not limit prosecutorial immunity to public employees, but rather we extended it to the Department of Justice and the State. DOJ, 172 Mont. at 92, 560 P.2d at 1330.
¶30 Our extension of prosecutorial immunity to public entities appears to be directly at odds with both the express language and the purpose of Section 18. Presumably, because we held that common-law prosecutorial immunity was not waived by Section 18, we were free to exercise our common-law powers to extend it to governmental agencies. In doing so, we referred to Creelman v. Svenning (Wash. 1966), 410 P.2d 606, in which the Washington Supreme Court stated:
The public policy which requires immunity for the prosecuting attorney, also requires immunity for both the state and the county *36 for acts of judicial and quasijudicial officers in the performance of the duties which rest upon them; otherwise, the objectives sought by immunity to the individual officers would be seriously impaired or destroyed.
Creelman, 410 P.2d at 608 (emphasis added).
¶31 In Koppen, we concluded that the doctrine of quasi-judicial immunity (a “logical descendant of prosecutorial immunity”) precluded a suit for tort damages against the Board of Medical Examiners and the State. Koppen, 233 Mont at 219-20, 759 P.2d at 176. In Koppen, the District Court had held that the Board was immune under § 2-9-112, MCA, which grants immunity to the State and other governmental units from acts of the judiciary. Section 2-9-112, MCA, provides, “judiciary includes those courts established in accordance with Article VII of The Constitution of the State of Montana.” (Emphasis added.) The District Court inferred that by using the word “includes,” the legislature had intended to grant immunity to administrative agencies exercising quasi-judicial authority.
¶32 On appeal, we affirmed the District Court’s conclusion that the Board and the State were immune from suit, but on different grounds. Citing DOJ, we held that Section 18 only abolished sovereign immunity, which is separate and distinct from prosecutorial or quasi-judicial immunity. In doing so, we observed:
The Bill of Rights Committee of the 1972 Constitutional Convention stated in its Comments accompanying the proposed text of Section 18 that its purpose was to abolish “the archaic doctrine of sovereign immunity.” 2 Mt. Leg. Council, Montana Constitutional Convention, 1971-72, 637. In reporting Section 18 to the full convention for approval, Delegate Murray of the Bill of Rights Committee stated, “We feel that the doctrine of sovereign immunity, which we are attempting to do away with by this particular provision, really means that the king can do whatever he wants but he doesn’t have to pay for it; and we’d like to do away with that doctrine.” 5 Mt. Leg. Council, Montana Constitutional Convention, 1971-72, 1760.
Koppen, 233 Mont. at 218, 759 P.2d at 175. We then cited Butz v. Economou (1978), 438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 2d. 895, for the proposition that the imposition of liability would “distort” the Board’s exercise of its discretion when fulfilling its quasi-judicial role. Koppen, 233 Mont. at 219, 759 P.2d at 176.
*37 ¶33 In dissent, Justice Sheehy, joined by Justice Hunt, noted that the Butz court was deciding the personal liability of government agents not the liability of the government itself. Koppen, 233 Mont. at 222, 759 P.2d at 178. Justice Sheehy observed that § 2-9-305(1), MCA, already immunizes public employees from civil liability for their actions taken within the course and scope of their employment. Justice Sheehy stated:
[T]he liability of the state here should be decided on principles other than cases [such as Butz] applying only to personal liability. Here, the state, by constitution and by statute, is not immune from suit. The state is liable to persons who suffer injuries proximately caused by state governmental torts as a matter of public policy and as a constitutional right.
It is, therefore, quite illogical for the majority to hold that the state is exempt from suit in this case because of the possibility that the Board’s discretion would be subject to distortion by considerations of possible litigation against the state arising from the actions of the Board of Medical Examiners. The state, without question, has accepted that risk in assuming liability, and in subjecting itself to suit.[1]
Koppen, 233 Mont. at 223, 759 P.2d at 178-79.[2]
¶34 Exercising our authority to expound on the common-law principle of quasi-judicial immunity, we have held that agencies are not absolutely immune from tort claims. In order to invoke quasi-judicial immunity, an agency must have been performing a quasi-judicial function as opposed to a purely ministerial task. See State ex rel. Workers’ Comp. v. District Court (1990), 246 Mont. 225, 805 P.2d 1272. A public agency cannot invoke quasi-judicial immunity if it put itself in the role of litigant or advocate and not adjudicator. See State, Bd. of Dentistry v. Kandarian (1991), 248 Mont. 444, 448, 813 P.2d 409, 412 *38 (observing that, although quasi-judicial immunity and prosecutorial immunity are doctrinally similar, agency bringing suit in district court is not checked by procedural safeguards inherent in the prosecutorial system such as probable cause investigation and swearing under oath).
¶35 There seems to be three premises for the judicial extension of immunity to agencies functioning in quasi-judicial roles: (1) prosecutorial and sovereign immunity are doctrinally distinct; (2) Section 18 only abolished sovereign immunity; and (3) the extension of prosecutorial immunity to quasi-judicial state entities reflects sound policy. See DOJ, 172 Mont. at 92-93, 560 P.2d at 1330.1 will examine each of these premises, in turn.
¶36 Prosecutorial immunity and sovereign immunity are “different concepts and are supported by different considerations of public policy.” DOJ, 172 Mont. at 92, 560 P.2d at 1330. Unfortunately, the DOJ court did not analyze this distinction, nor did it point to any authorities. The doctrine of sovereign immunity is comprised of two separate principles. The first principle is that a state is immune from suit in its own courts without its consent. See, e.g., Peretti v. State (1989), 238 Mont. 239, 777 P.2d 329. The second principle is that a state is immune from liability for the torts committed by its officers, agents, and employees. 1 Civil Actions Against State and Local Governments § 1.1 (Jon L. Craig ed., 2nd ed. 1992).
¶37 Several fundamental purposes are served by the doctrine of sovereign immunity. Sovereign immunity shields the state from the burden of defending lawsuits, protects the state treasury, protects the operation of government from interference by the judiciary and private citizens, and permits governmental officials to exercise discretion in carrying out their responsibilities. Civil Actions, § 1.2 .
¶38 A theory of official personal immunity also exists. “Whether based on common law or statute, the general rule is that public officials acting within the scope of their authority are absolutely immune from tort liability for exercising judicial or legislative functions [and] enjoy a qualified immunity from tort liability for exercising executive or administrative functions.” Civil Actions, §4.1. “The doctrine of official immunity rests on the public policy consideration that effective government requires officers and employees who are free to act independently, without deterrence and intimidation by the threat of personal liability and vexatious lawsuits.” Civil Actions, § 4.2.
*39 ¶39 It appears that official (“prosecutorial” or “quasi-judicial”) personal immunity is doetrinally distinct from sovereign immunity — the latter immunity protects state entities, while the former protects state officers personally. Here, sovereign immunity being applicable to the Board as a state entity, quasi-judicial immunity should not apply to protect it from Rahrer’s suit.
¶40 Article II, Section 18 of the Montana Constitution did not abolish prosecutorial immunity. DOJ, 172 Mont. at 92, 560 P.2d at 1330. Section 18 specifically states that “[t]he state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit.” (Emphasis added.) The Bill of Rights Committee of the 1972 Constitutional Convention stated in its comments accompanying the proposed text of Section 18 that its purpose was to abolish “the archaic doctrine of sovereign immunity.” Montana Constitutional Convention, Committee Proposals, Vol. II at 637 (hereinafter “Proposals”). By sovereign immunity, the Committee meant the doctrine which “bars tort suits against the state for negligent acts by its officials and employees.” Proposals, at 637. The Committee stated that “all parties should receive fair and just redress whether the injuring party is a private citizen or a governmental agency” Proposals, at 637 (emphasis added).
¶41 The conclusion that Section 18 only abrogated sovereign immunity is probably correct and does correspond with the language of this Section. The Committee did not claim that Section 18 would abrogate any pre-existing common-law personal immunities for public officials or employees. However, we have made an end-run around Section 18 by extending theories of personal immunity (e.g., prosecutorial or quasi-judicial immunity) to state entities. Again, as noted above, the Board, as a state entity is not protected by personal, quasi-judicial immunity; it is covered by sovereign immunity which has been abrogated by Section 18.
¶42 The extension of prosecutorial immunity to quasi-judicial state entities reflects sound policy. See DOJ, 172 Mont. at 92-93, 560 P.2d at 1330. The underlying assumption of this premise is that this Court has the authority to extend prosecutorial or quasi-judicial immunity to state entities. This assumption is highly questionable given the language of Section 18. As discussed above, Section 18 waives the immunity of state entities. Section 18 contains two qualifications to this general waiver: (1) the immunity is limited to suits for “injury to a person or property” and (2) the legislature is granted the authority to *40 provide immunity to state entities by a 2/3 vote of each house. Section 18 does not expressly contain a reservation of immunity for state entities that are performing prosecutorial or quasi-judicial functions.
¶43 The assumption that this Court has the authority to extend prosecutorial immunity to state entities is also questionable given the purpose or legislative history of Section 18. The assertion that the framers of Section 18 did not intend to abrogate prosecutorial immunity might be accurate. However, it is perfectly clear that the framers did intend to do away with sovereign immunity — the doctrine which “bars tort suits against the state for negligent acts by its officials and employees.” The Bill of Rights Committee unanimously voted to adopt this provision because the doctrine “no longer has a rational justification in law” and because it is “repugnant to the fundamental premise of the [sic] American justice: all parties should receive fair and just redress whether the injuring party is a private citizen or a governmental agency.”Proposals, at 637. By extending prosecutorial or quasi-judicial immunity to state entities, this Court has frustrated the very purpose of Section 18 — i.e., “bar[ring] tort suits against the state for negligent acts by its officials and employees.”
¶44 Accordingly, while I agree that our opinion correctly reflects the state of the law as regards the application of quasi-judicial immunity to the Board in this case, I am also of the opinion that our jurisprudence supporting this application is fundamentally flawed and is, in fact, in violation of Article II, Section 18 of the Montana Constitution. Under the circumstances I will look forward to the case when we are accorded the opportunity to revisit this issue.
JUSTICE TRIEWEILER concurs with the foregoing special concurrence.

. Although Justice Sheehy’s dissent is compelling, it might have been more accurate to say that the people of Montana, rather than the state, have decided through the enactment of Section 18 that they would prefer to subject the state to suit at the cost of potentially “distorting” the decision making process of executive agencies.

. See also Trout, 252 Mont. at 431-32, 830 P.2d at 90 (Trieweiler, J., concurring and dissenting) (“To my knowledge, the Montana Legislature has never voted to impose quasi-judicial immunity by a 2/3 vote or by any other vote. Therefore, to judicially create such immunity contravenes an express provision of the Montana Constitution....”).