No. 05-543

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 146

STATE OF MONTANA,

      Plaintiff and Appellant,

  v.

DAVID RENSVOLD,

      Defendant and Respondent.

APPEAL FROM:    The District Court of the Twentieth Judicial District,
                  In and For the County of Lake, Cause No. DC 2005-87,
                  Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Hon. Mike McGrath, Montana Attorney General, Ilka Becker,
           Assistant Attorney General, Helena, Montana

           Robert J. Long, Lake County Attorney, Polson, Montana

      For Respondent:

           Matthew H. O'Neill, O'Neill Law Office, Polson, Montana

Submitted on Briefs:  May 24, 2006

Decided:  June 27, 2006

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     The State of Montana (State) appeals from the amended order granting a motion to dismiss and a dismissal order entered by the District Court on August 3, 2005. In this order, the District Court granted the Defendant, David Rensvold's (Rensvold), July 13, 2005 motion to dismiss. The District Court also dismissed the State's appeal filed June 28, 2005, from the Lake County Justice Court Order dated June 27, 2005, dismissing the State's Case No. TK-2005-0001327. We affirm the District Court.

## ISSUE

¶2     The issue on appeal is whether the District Court erred in dismissing the charge against Rensvold and the State's appeal of the aforementioned Lake County Justice Court order.

## BACKGROUND

¶3     On May 24, 2005, Rensvold was charged with driving under the influence of alcohol in violation of § 61-8-401(1)(a), MCA, first offense, in Polson, Lake County, Montana. The following day, Rensvold appeared in Lake County Justice Court before the Honorable Chuck Wall, Justice of the Peace, and entered his plea of not guilty to the charge. The record reflects that Rensvold requested a jury trial and that Judge Wall set an omnibus hearing for June 27, 2005, at 10:00 a.m. A notice of the omnibus hearing was given by mail by Judge Wall to Rensvold and to the Lake County Attorney's Office on May 27, 2005.

¶4     On May 31, 2005, attorney Matthew H. O'Neill (O'Neill) filed and served on the Lake County Attorney, notice of his appearance as counsel for Rensvold. On that same date,

O'Neill filed and served a detailed motion for discovery and brief. Judge Wall granted this motion on June 2, 2005, and so notified O'Neill and the Lake County Attorney on the same day.

¶5 On June 27, 2005, Judge Wall dismissed the charge against Rensvold without prejudice. In his order, Judge Wall stated:

> THIS MATTER having come before the court for a trial on the 27th of June 2005. The Defendant was not present. Attorney Matt O'Neil was present. The State failed to show for trial.[1]
>
> The Court attempted to contact the County Attorney's office twice from the Bench at 10:12 a.m., subsequent to an earlier telephone call from the Clerk of Court to advise that the Court was proceeding with Omnibus Hearing. At 10:13 a.m., the Court granted the Defendant's Motion to Dismiss.

¶6 Although Judge Wall dismissed the charge against Rensvold "without prejudice," the County Attorney made no attempt to re-file the charge in the Justice Court.

¶7 Rather, on June 28, 2005, the County Attorney filed in the Twentieth Judicial District Court, a notice of appeal of Judge Wall's June 27, 2005 dismissal order. On June 29, 2005, the County Attorney filed his own motion for discovery and a notice of omnibus hearing for July 6, 2005. The motion for discovery was granted July 1, 2005, by the District Court. A minute entry reflects that on July 6, 2005, O'Neill objected to an "improper notice of omnibus hearing," and stated he was preparing a motion to dismiss and

---

[1] The Court's use of the word "trial" is not clear as the proceeding scheduled for June 27, was the omnibus hearing, not the trial. In any event, this anomaly has not been raised or addressed by the parties on appeal, and we, therefore, decline to make it an issue.

3

needed a one-week continuance. There was no objection by the State and the District Court set the omnibus hearing for August 10, 2005.

¶8    On July 13, 2005, Rensvold's counsel filed a motion to dismiss and supporting brief. In his brief, Rensvold correctly pointed out that the State's notice of appeal was defective in citing § 46-20-103(2)(e), MCA, which provides that the State may appeal from any court order which results in "suppressing evidence." Since Judge Wall did not suppress evidence but rather dismissed the State's case, § 46-20-103(2)(e), MCA, was inapplicable. The proper subsection was § 46-20-103(2)(a), MCA, which permits an appeal from a court order "dismissing a case." Rensvold argued that strict construction of the notice of appeal required its dismissal since the State's notice was faulty.

¶9    Rensvold also argued that Judge Wall's order of dismissal was not appealable because it was based on a failure to prosecute. Rensvold maintained that because § 46-17-311(5), MCA, permitted the court to dismiss a defendant's appeal to District Court for failure to appear at a scheduled court date, reciprocity demanded the same remedy be available to the defendant if the State failed to appear in the lower court proceeding. In support of this argument, Rensvold contended that he had a substantive due process right to "two bites of the apple"—i.e., a jury trial in Justice Court and a second jury trial in District Court, if he should appeal. He maintained that this right of two jury trials could not be frustrated by the State's failure to show up for the proceeding in the Justice Court and by then appealing for a trial *de novo* in District Court.

4

¶10    The State answered Rensvold's motion stating that its absence at the scheduled Justice Court omnibus hearing on June 27, 2005, was "due to miscommunication and the sometimes fluid nature of the Justice Court schedule." The State argued that it had a statutory right and constitutional right to appeal; that its appeal was timely; and that it was entitled to appeal under § 46-20-103(2)(a), MCA. The State did not substantively address its conceded failure to cite the appropriate subsection of the statute in its notice of appeal. Finally, the State referred to Rensvold's "two bites of the apple" argument as "disingenuous." In his reply brief, Rensvold reargued his opening brief and answered the State "disingenuous" comment by citing to and discussing *Woirhaye v. Fourth Judicial Dist. Court*, 1998 MT 320, 292 Mont. 185, 972 P.2d 800.

¶11    On August 2, 2005, the District Court entered its order granting Rensvold's motion to dismiss the State's appeal and also dismissing the charge against him. The District Court entered an amended order on August 3, 2005. In his rationale, the District Judge noted that the State cited the wrong subsection of § 46-20-103, MCA, in its notice of appeal and concluded that, in so doing, the State's notice of appeal was "fatally defective."

¶12    Referring to the County Attorney's "disingenuous" comment as itself disingenuous, the District Court Judge went on, however, to conclude:

> By law the Defendant is entitled to a jury trial in Justice Court and, upon an unfavorable verdict, a jury trial de novo in District Court. If the County Attorney would deprive the Defendant of one of those jury trial rights by merely failing to appear as ordered in the Justice Court, incurring the dismissal wrath of the Justice of the Peace and then appealing to the District Court, the Defendant would be denied his right to two jury trials.

5

> This court will not allow the County Attorney's indifference to the Justice Court criminal proceedings to deprive the Defendant of his constitutional due process rights. [The State's] appeal is dismissed.

¶13 The State timely appealed the District Court's decision to this Court.

## STANDARD OF REVIEW

¶14 A District Court's grant or denial of a motion to dismiss in a criminal case is a question of law which we review *de novo*. *State v. Brander* (1996), 280 Mont. 148, 151, 930 P.2d 31, 33 (citations omitted).

## DISCUSSION

¶15 The District Court's decision focused on the "fatally defective" mis-cite by the State of the statutory grounds for its appeal. More important to our decision here, however, the District Court also grounded its dismissal in the County Attorney's indifferent attitude toward Judge Wall's order to appear in court at a date and time certain for the omnibus hearing. The District Court pointed out that in Montana a defendant charged in Justice Court is entitled to a jury trial in that court and a jury trial *de novo* on appeal to the District Court, and that his right to "two bites of the apple" could not be so "cavalierly dismissed" by the County Attorney.

¶16 We conclude that this latter approach by the District Court is not only persuasive but dispositive. Accordingly, we decline to address the District Court's rationale that the State's mis-cite of the statutory grounds for its appeal was "fatally defective."

¶17 In *Woirhaye*, we held that § 46-17-201(3), MCA, was unconstitutional because it infringed upon the rights guaranteed to Montana criminal defendants under Article II,

6

Sections 24 and 26 of the Montana Constitution. *Woirhaye*, ¶ 26. The former section of Montana's Constitution guarantees that persons accused of crimes have the right to a speedy public trial by an impartial jury in all criminal prosecutions. The latter section guarantees that the right of trial by jury is secured to all and "shall remain inviolate" and further provides that in all criminal actions the verdict shall be unanimous.

¶18    Section 46-17-201(3), MCA, provided that a defendant charged with a misdemeanor filed in a justice or city court was limited to one jury trial either in the court of limited jurisdiction or, on appeal, to a district court. The statute required that the defendant elect either a jury trial in the justice or city court or reserve jury trial for the district court in the event of conviction and subsequent appeal to the district court. *Woirhaye*, ¶ 5.

¶19    We noted in *Woirhaye* that the right to a jury trial by one's peers has been a part of the Anglo-American concept of justice since the Magna Carta was signed in the year 1215, and was guaranteed under both the federal Constitution in Article III, Section 2, clause 3, and in the Sixth Amendment, and also in Article II, Sections 24 and 26 of the Montana Constitution. *Woirhaye*, ¶¶ 9-11. In according persons accused of crimes in Montana greater rights to a jury trial than those guaranteed under the federal Constitution, we observed that the guarantees of the Montana Constitution are plain on their face in mandating that an accused has an absolute right to trial by jury in all criminal prosecutions and a unanimous verdict. *Woirhaye*, ¶¶ 14, 16. Moreover, we emphasized that the right of a trial by jury is secured to all and shall remain "inviolate." *Woirhaye*, ¶ 19.

¶20    As a result of the clear mandates of Montana's constitutional right to a jury trial, we held that § 46-17-201(3), MCA, which restricted that right to one jury trial either in the court of limited jurisdiction or in the district court, was unconstitutional. We concluded that it was clear under Montana's Constitution that a defendant had an absolute right to a jury trial in both the court of limited jurisdiction, and then, again, *de novo* in district court, on appeal. We determined that the statute acted, in effect, "as a forced waiver of the right to a jury trial either at the justice court level or at the district court level." *Woirhaye*, ¶ 22.

¶21    At this juncture and in order to ensure this Opinion is not over-read, it is appropriate that we clarify what *Woirhaye* requires and what it does not. While *Woirhaye* requires a jury trial in a justice court and in a district court *de novo* on appeal as a general rule in misdemeanor cases, there are instances where the accused is entitled to only one jury trial.

¶22    Under Article VII, Section 5(2), of the Montana Constitution, "[j]ustice courts shall have such original jurisdiction as may be provided by law." Moreover, Article VII, Section 4(3), of the Montana Constitution, provides that "courts [other than the district courts] may have jurisdiction of criminal cases not amounting to felony and such jurisdiction concurrent with that of the district court as may be provided by law."

¶23    Specifically, under Montana's Constitution, it is the Legislature's prerogative to provide for subject matter jurisdiction—i.e., whether original, exclusive or concurrent jurisdiction—of, among others, the justice courts. Where the Legislature has provided for concurrent jurisdiction of an offense in justice court and in district court, it follows that the accused is entitled to only one jury trial if the case is filed in the first instance in the district

8

court. For example, § 3-5-302(2)(a)–(c), MCA, provides for concurrent jurisdiction in three limited situations: (a) a misdemeanor filed as part of the same transaction as a felony or misdemeanor offense charged in a district court; (b) a misdemeanor resulting from the reduction of a felony or misdemeanor offense charged in a district court; and (c) a misdemeanor resulting from the conviction of a lesser included offense in a felony or misdemeanor case tried in a district court.

¶24 Similarly, concurrent jurisdiction is also provided for in misdemeanors punishable by a fine of $500 and imprisonment exceeding 6 months or both and in misdemeanor fish and game violations where the punishment exceeds a fine of $1,000 or imprisonment for 6 months or both. Sections 3-10-303(1)(c) and (d), MCA. And, § 3-10-303(2), MCA, provides for concurrent jurisdiction under certain circumstances where the county has established a drug court.

¶25 Where offenses fall under the concurrent jurisdiction statutes described in the preceding two paragraphs, the accused is entitled to two bites of the jury trial apple under *Woirhaye* if the offense is filed in the first instance in a justice court—i.e., a jury trial in a justice court and a second jury trial *de novo* on appeal in a district court. However, under these statutes, if the charge is filed originally in a district court, then the defendant is entitled to only one jury trial in that court and any appeal from a conviction or sentence in a district court being taken to this Court. Art. VII, § 2(1), Mont. Const.

¶26 Finally, § 3-10-115, MCA, provides for justice courts of record and provides that the appellate role of the district court vis-à-vis these courts is limited to reviewing the record and

questions of law. *See* Art. VII, § 4(2), Mont. Const. (the district court "shall hear appeals from inferior courts as trials anew *unless otherwise provided by law*") (emphasis added). Accordingly, while the accused is entitled to a jury trial in the justice court of record, he or she is not entitled to a second bite of the jury trial apple in the district court, since, by statute, the latter court serves only to review the record from the justice court of record and questions of law.

¶27 Accordingly, in the instances described in ¶¶ 21 through 25 above, where the Legislature has qualified the subject matter jurisdiction of the justice courts, the accused may not have the absolute right to a jury trial in justice court and then, again, in district court. In concurrent jurisdiction cases, if the charge *can* be filed originally in district court and *if*, in fact, it is filed in district court, then the accused has only a right to a trial—and concomitantly to a jury trial—in district court.

¶28 Similarly, where, as discussed in ¶ 26 above, the Legislature has qualified the appellate jurisdiction of the district court, the accused is only entitled to one jury trial. Specifically, if the justice court is one of record, then it becomes the sole trial court, and the district court is, statutorily, limited to reviewing the record from the former court and questions of law.

¶29 However, where one of the above statutory qualifications to the subject matter jurisdiction of the justice court or to the appellate jurisdiction of the district court does not exist, then the accused is absolutely entitled to two bites of the jury trial apple. That is what we held in *Woirhaye* at ¶ 16, when we said that "[t]he guarantees of the Montana

10

Constitution are plain on their face in that an accused has an *absolute* right to a trial by jury '[i]n all criminal prosecutions.'"'  (Emphasis added.)  In other words, to the extent that the accused *is legally entitled* to a fact-finding prosecution in one or more courts, then he or she is, under Article II, Sections 24 and 26, also entitled to have those facts found by a jury of his or her peers in each court.  We held that the Legislature could not infringe upon that right by forcing the accused to waive one of the two jury trials to which he or she was legally entitled. *Woirhaye*, ¶¶ 16, 22, 26.

¶30    Within the context of the foregoing background, the case *sub judice* is one of the exclusive, original jurisdiction types of cases.  The prosecutor was required to file the charge against Rensvold in Justice Court;[2] the prosecutor had no power to file his complaint originally in District Court because it was not a concurrent jurisdiction case.  Section 3-10-303(1)(a), MCA; Art. VII, § 5(2), Mont. Const.

¶31    Accordingly, on the facts here, Rensvold had an absolute right to two jury trials—one in the Justice Court and one in the District Court.  As our Opinion notes, the prosecutor could have avoided the situation he now finds himself in in one of two ways:  (1) he could have showed up in the Justice Court as ordered; or (2) he could have refiled the charge *in the Justice Court* after it was dismissed without prejudice.  He did neither.  Rather, the prosecution's approach in this case and its rationale that the accused is not entitled to "two

_____

[2] Although not addressed in the record on appeal, we, nonetheless, take judicial notice under Rule 201(b), M.R.Evid., of public records in the Office of the Supreme Court Administrator that the Lake County Justice Court is not a justice court of record.  Therefore, since the

11

bites of the apple," accomplishes precisely the same result as did the statute which we declared unconstitutional in *Woirhaye.*

¶32 The District Court correctly concluded that Rensvold is entitled by law to a jury trial in Justice Court and, upon an unfavorable verdict, to a jury trial *de novo* in District Court. The County Attorney, by his indifferent failure or refusal to participate in the Justice Court proceedings, may no more deny an accused's right to "two bites of the apple" than could the Legislature statutorily frustrate a defendant's Article II, Section 24 and 26 rights to a jury trial in both courts (absent that branch of government qualifying the actual subject-matter jurisdiction of the justice court—which it has the right to do under Article VII, Section 5(2) of the Montana Constitution). If the prosecutor could nullify the accused's right to a jury trial in Justice Court by the simple expedient of not appearing in that court and by then appealing the court's dismissal of the case to the District Court for a jury trial *de novo,* the prosecution could accomplish indirectly what we prohibited the Legislature from doing directly. As the District Court Judge concluded, a criminal accused's constitutional right to two bites of the jury trial apple will not be so easily and cavalierly denied, when, as here, he or she is legally entitled to a trial in each court.

¶33 We hold that, on the facts of this case, the District Court did not, as a matter of law, err in dismissing the charge against Rensvold, along with the State's appeal, on the basis that Rensvold's right to a jury trial in both the Justice Court and, on appeal to the District Court,

Justice Court here has exclusive original jurisdiction, there is no statutory preclusion of Rensvold's right to a jury trial *de novo* on appeal in the District Court.

12

was frustrated by the County Attorney's failure to appear in the Justice Court proceedings and by his subsequent appeal to the District Court for a trial *de novo*.

¶34    While the District Court's decision did not mention *Woirhaye* or Article II, Sections 24 and 26, but instead, focused on Rensvold's right to constitutional due process, we cannot conclude that the District Court erred.  We will uphold a district court's decision if correct, regardless of the reasons given below for the result.  *District No. 55 v. Musselshell County* (1990), 245 Mont. 525, 527, 802 P.2d 1252, 1253 (citations omitted).  We hold that the District Court reached the legally correct result here.

¶35    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JOHN WARNER