No. 88-499

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

MICHAEL PERETTI, HENRI HODNIK,
et al.,

Plaintiffs and Respondents,

-vs-

THE STATE OF MONTANA; THE BOARD OF
PUBLIC EDUCATION and its members,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Marc Racicot, Attorney General, Helena, Montana
John Paulson argued, Asst. Atty. General, Helena

For Respondent:

Williams Law Firm; Richard Ranney argued, Missoula,
Montana

---

Submitted: June 20, 1989

Decided: July 19, 1989

Filed:

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendants appeal from the final judgment of the Fourth Judicial District Court of Missoula County awarding the fourteen plaintiffs a sum total of $2,479,916 in damages. This judgment was based upon the District Court's earlier grant of partial summary judgment in favor of the plaintiffs on the issue of liability. The court ruled that the State was liable for a breach of implied contract caused by the premature termination in 1977 of the Aviation Technology Program at the Missoula Technical Center. We reverse.

The issues presented for review:

1. Did the District Court err in granting partial summary judgment in favor of plaintiffs on the issue of liability?

2. Did the District Court err in determining the measure and amount of damages to be awarded plaintiffs?

In the fall of 1976, plaintiffs enrolled in the Aviation Technology Program at the Missoula Technical Center (Center). This Center is one of five such post-secondary vocational education centers financed by state appropriations. Permissive county levies may supplement State financing. The Board of Public Education (Board) retains overall control over the budget and curriculum of each center.

In 1977, the legislature appropriated $7,042,721 in funding for the five centers, a reduction of $819,388 from the 1975 biennial legislative appropriation. This reduction entailed a cutback in vocational programs. After consideration of various alternatives, the Board decided to eliminate the Aviation Technology Program (Program) because it had the highest cost per student of all the programs

offered at the Center and because it would affect fewer students (approximately 30 to 45 students) than a cut in many other programs.

In June of 1977, the Board notified those sixteen students at the Center who had already successfully completed one year of the integrated two-year program, that they would be unable to complete the second year of training because the program was being discontinued. The students thereafter filed suit alleging breach of the State's implied contract to provide a two-year, six-quarter course of study which would prepare them for a career as a commercial pilot. As alleged by the students, the "Career Pilot Program" detailed in the Training Course syllabus was designed as a two-year integrated whole, with completion of course work and flight training more than sufficient to meet minimum FAA requirements and to qualify students for employment as commercial pilots and certified flight and ground instructors. Plaintiffs also alleged that this breach summarily deprived them of liberty and property interests without due process of law.

Plaintiffs initially filed suit in federal district court for damages allegedly resulting from the premature termination of the Program. See Peretti v. Montana (D. Mont. 1979), 464 F.Supp. 784. The Ninth Circuit Court of Appeals, however, subsequently held the State of Montana had not consented to suit in federal court and the Eleventh Amendment therefore precluded district court jurisdiction over the suit. Montana v. Peretti (9th Cir. 1981), 661 F.2d 756. Plaintiffs then filed suit in the Fourth Judicial District Court of Missoula County.

The parties agreed to bifurcate the issues of liability and damages. The issue of liability was then submitted on cross-motions for summary judgment; the parties stipulated

3

that the court could render a decision on these cross-motions based upon its consideration of an agreed statement of facts and the exhibits and transcript from the earlier federal court trials.

On July 12, 1985, the District Court ruled that an implied contractual relationship existed between the parties which entitled plaintiffs to an opportunity to complete the Program's six-quarter training period and to receive a diploma upon completion. The court held that the State breached its implied contract with the students when it prematurely terminated the Program. The court thus granted partial summary judgment in favor of plaintiffs, finding defendants liable for those damages resulting from this breach.

The State requested and received a certification of the partial summary judgment as final under Rule 54(b), M.R.Civ.P., so it could then file an interlocutory appeal prior to resolution of the issue of damages. The State, however, subsequently decided not to initiate an appeal until after judgment on the issue of damages.

The issue of damages was later tried without a jury. On July 15, 1988, the court issued its Findings of Fact, Conclusions of Law, Opinion and Order awarding damages to each of the fourteen plaintiffs who were deposed and presented evidence of their damages. The court held that those seven students not engaged in a career as pilots (hereinafter "the non-pilots") received no financial benefit from the one-year aviation training. The court thus concluded that the detriment suffered by these non-pilots equaled the losses they incurred in attending the one-year aviation program (reliance damages) plus the lost expectancy of their bargain. The court then multiplied the total amounts expended in 1977 to attend one year of the Program by

4

an inflation index of 1.9 to arrive at the 1988 equivalency of the total amount of damages incurred by the non-pilots in reliance on the implied contract. The total amounts awarded to each non-pilot ranged from a low of $193,940 to a high of $237,979.

The damages awarded those seven students who went on to become pilots, on the other hand, equaled the increased average cost of alternate training, the average lost income caused by the average one-year delay in beginning a career as pilots, and the value of the employment benefit lost by lack of a degree from a school with a formal integrated two-year pilot training program. The total awarded to each pilot, after consideration of the 1.9 inflation index, amounted to $147,350. The court dismissed the claims of the two students who presented no evidence of damage.

Defendants thereafter filed this appeal from the final judgment of the District Court.

The State contends that the District Court erred in holding it liable for breach of an implied contract since the State has not clearly and unambiguously waived its sovereign immunity as to implied contract actions. Absent such a clear waiver, allege appellants, the State may not be sued in its own courts.

We recognize that the modern trend among the states favors a diminution of those sovereign immunity protections available to the states. The Colorado case of Evans v. Board of County Comm'rs of El Paso County (Colo. 1971), 482 P.2d 968, provides a striking rationale for this latent trend toward abolishing many forms of sovereign immunity previously recognized:

> The monarchical philosophies invented to
> solve the marital problems of Henry VIII
> are not sufficient justification for the
> denial of the right of recovery against

> the government in today's society. Assuming that there was sovereign immunity of the Kings of England, our forbears [sic] won the Revolutionary War to rid themselves of such sovereign prerogatives.

Id. at 969.

Montana similarly has endorsed this trend toward diminishing sovereign immunity protections, as evidenced by the 1972 constitutional abolishment of the State's sovereign immunity as to all actions involving injuries to a person or property. As stated in the 1972 Montana Constitution, Article II, sec. 18:

> The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

While Art. II, sec. 18 diminishes sovereign immunity protections previously available to the State, it does not abolish all sovereign immunity. This Court has previously held that the waiver found in Art. II, sec. 18 extends only to tort actions, and not contract actions, involving injuries to a person or property. LeaseAmerica Corp. of Wis. v. State (Mont. 1981), 625 P.2d 68, 71, 38 St.Rep. 398, 403. By interpreting Art. II, sec. 18 as applying only to tort actions, this Court effectuated the intent to prevent a constitutional waiver of sovereign immunity as to contract actions, an intent expressed by Constitutional Convention Delegate Habedank:

> . . . I think there are many instances where there may be some governmental employees [who] do some things in connection with contractual fields that we try to stick the government for where

6

> there is a good reason to maintain our governmental immunity in those situations.

Montana Constitutional Convention, Vol. V, at 1761. Moreover, this interpretation comports with the principle that any waiver of a State's sovereign immunity must be strictly construed. Storch v. Board of Directors of E. Mont. Region Five Mental Health Center (1976), 169 Mont. 176, 179, 545 P.2d 644, 646, citing 72 Am.Jur.2d, States, Etc., § 121.

Finding no waiver of sovereign immunity for contract actions in the Constitution, we next turn to an examination of the statutes for such a waiver, because a state cannot be sued in its own courts without its plain and specific consent to suit either by constitutional provision or by statute. See, e.g., Heiser v. Severy (1945), 117 Mont. 105, 158 P.2d 501; State ex rel. Freebourn v. Yellowstone County (1939), 108 Mont. 21, 88 P.2d 6. Read by itself, § 18-1-404, MCA, appears to provide just such an unambiguous and specific waiver of the State's immunity as to all contract actions, express and implied alike. Section 18-1-404(1), MCA, reads:

> The state of Montana shall be liable in respect to _any_ contract entered into in the same manner and to the same extent as a private individual under like circumstances, except the state of Montana shall not be liable for interest prior to or after judgment or for punitive damages. (Emphasis added.)

This individual statutory provision, however, may not be read and properly understood in a vacuum. Rather, it must be read and construed in such a manner "as to insure coordination with the other sections of an act." Hostetter v. Inland Dev. Corp. of Mont. (1977), 172 Mont. 167, 171, 561 P.2d 1323, 1326; see also Barney v. Board of R.R. Comm'rs (1932), 93 Mont. 115, 129, 17 P.2d 82, 85 (requiring a court to consider

7

all statutes in their entirety relating to the matter at issue).

The meaning of § 18-1-404, MCA, is ambiguous when read in conjunction with the other provisions in part 4, specifically § 18-1-401, MCA. Section 18-1-404, MCA, appears to waive sovereign immunity as to both express and implied contracts, yet § 18-1-401, MCA, expressly grants district courts jurisdiction only over express contract actions. As stated in § 18-1-401, MCA:

> The district courts of the state of Montana shall have exclusive original jurisdiction to hear, determine, and render judgment on any claim or dispute arising out of any express contract entered into with the state of Montana or any agency, board, or officer thereof. (Emphasis added.)

Because these two above-mentioned statutes, when read together, render the plain meaning of each ambiguous, we turn to the legislative history of each to determine the legislative intent, and thereby the proper statutory construction of each provision. See, e.g., Thiel v. Taurus Drilling Ltd. 1980-II (1985), 218 Mont. 201, 710 P.2d 33.

These two statutory provisions were first enacted by the 34th Legislature in 1955. They were enacted as part of Chapter 138, which was entitled "An Act Permitting Actions on Express Contracts Against the State of Montana and Describing the Practice and Procedure Therefor." 1955 Laws of Montana, Ch. 138. The title provides a clear indication that the legislature intended only to waive the State's sovereign immunity as to express contracts. As stated in Dept. of Revenue v. Puget Sound Power & Light Co. (1978), 179 Mont. 255, 263, 587 P.2d 1282, 1286, the title of an act is presumed to indicate the legislature's intent with regard to the provisions contained therein. See also Barney, 17 P.2d

at 85 (stating the title of an Act "is indicative of the legislative intent and purposes in enacting it"). Because the legislature intended only to waive the State's immunity as to express contracts, as is readily apparent from the title, we hold that § 18-1-404(1), MCA, does not subject the State to liability on implied contracts. Having concluded thus, we find that the District Court erred in finding the State liable on a breach of implied contract theory and in then awarding damages.

The students also included arguments throughout their brief which were based on contentions that the "premature termination" of the Program violated their constitutional right to due process, the State's duty to deal fairly and in good faith with its citizens, and the State's express contract to provide a two-year integrated program. The liability and damages imposed by the District Court and appealed by the State, however, were based only on the determination that the State breached an implied contract. The students did not contend by way of cross-appeal that the District Court erred in failing to base its judgment on these other constitutional and express contract theories. We therefore will not consider the potential merits and effect of these other theories on the issues of liability and damages.

The orders of the District Court finding the State liable and awarding damages are reversed and we remand to the District Court for entry of judgment for the defendants.

Justice

9

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, concurring in part and dissenting in part:

I dissent from that portion of the majority opinion which finds state immunity to exist here on two grounds: (1) this case involves an express, and not an implied contract; (2) the legislature intended to waive sovereign immunity as to _any_ contract.

In the fall of 1976, the plaintiffs enrolled in the Career Pilot Program in the Department of Aviation Technology at the Missoula Technical Center, one of five state-designated post secondary vocational education centers. The program was advertised and represented by the state as a six quarter program, extending to two years.

Before making their decision to enroll in the aviation technology program, the students received a brochure describing it and the Missoula Technical Center's catalogue of course offerings. After enrolling, they received a detailed outline of the program, including two full years of classes. The brochures and outlines plainly contained full representation by the state that the program was being offered for six quarters and would not be terminated. The students relied on these documents, and on various statements from their instructors throughout the first year in enrolling in the course and continuing in the course.

The plaintiffs first brought this case in the federal court, and the decision in favor of the plaintiffs in that court was appealed to the Court of Appeals for the Ninth Circuit. The opinions in Paretti v. State of Montana (D. Mont. 1979), 464 F.Supp. 784. The decision was reversed not because it was incorrect, but because the Ninth Circuit Court felt that it had no jurisdiction, in this case, of the cause

- 11 -

against the state. What is important to this case is that in a reply brief filed in the Court of Appeals for the Ninth Circuit, pp. 9, 10, the state admitted:

> While the District Court found and "implied contract" as the result of the solicitation contained in exhibits 1, 2, and 3, it could have just as easily found "express contract" as that term is defined in § 28-2-103 which provides in pertinent part:
>
> '. . . . an express contract is one the terms of which are stated in words . . . '

I would hold that an express contract existed here.

But even if the contract is regarded as one arising from implication, the statute waiving state immunity, § 18-1-404(1), MCA, provides:

> The state of Montana shall be liable in respect to any contract entered into in the same manner and to the same extent as a private individual under like circumstances . . .

In an exercise of nimble sophistry, the majority determined that the word "any" excludes implied contracts. One has to be fast to keep up with this Court.

The finding that an implied contract is involved here, and that immunity does not extend to implied contracts violates the policy of this state set forth in § 20-30-101(1), MCA, as follows:

> It is the policy of this state to encourage and enable its citizens to obtain and receive an education commensurate with their abilities and desires. It is recognized that institutions offering post secondary education, vocational, and professional instruction perform a useful and necessary service to the citizens of this state in achieving this objective. It is found that certain institutions have either by unscrupulous, unfair, and deceptive practices or through substandard instruction deprived the citizens of this state of education opportunity and subjected them to financial loss.

In the light of our public policy, in which class of educators shall we place the state of Montana?

I concur in part as to the damages awarded. They should have been individualized and not generalized. I would remand only for the purpose of adjusting the damages based on the individual losses.

_____
                Justice

Mr. Justice William E. Hunt, Sr., dissenting:

I concur in the foregoing dissent of Justice Sheehy.

_____
                Justice