05-252

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 277

REID LANCE ROSENTHAL,

      Plaintiff and Appellant,

  v.

COUNTY OF MADISON, STATE OF
MONTANA, ROBERTA ZENKER,
f/k/a ROBERT ZENKER, Individually
and as former County Attorney for the
County of Madison, et al.,

      Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV 2004-362
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Quentin M. Rhoades, Sullivan, Tabaracci & Rhoades, P.C.,
Missoula, Montana

      For Appellees:

            Mike McGrath, Attorney General; Paul D. Johnson,
Assistant Attorney General, Helena, Montana

            Richard Larson, Harlen, Chronister, Parish & Larson, P.C.,
Helena, Montana (for Madison County)

Submitted on Briefs:  February 7, 2007

Decided:  October 23, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Plaintiff Reid Rosenthal (Rosenthal) appeals the District Court's entry of summary judgment in favor of the Defendants Madison County (County), the State of Montana (State), and Madison County Attorney Zenker (Zenker). Rosenthal also appeals the denial of his M. R. Civ. P. 56(f) motion requesting further discovery filed after the Defendants filed their summary judgment motion, as well as the District Court's denial of his request to add a claim for attorney's fees under the private attorney general doctrine. We affirm.

¶2 Rosenthal filed a malicious prosecution claim and later amended it to include claims for intentional and negligent emotional distress, alleging that he suffered injuries to his reputation and business as a result of a misdemeanor complaint filed but later dismissed by Zenker. The District Court granted summary judgment in favor of all defendants after determining that Zenker's conduct was within the scope of the County Attorney's statutory authority and, therefore, was entitled to absolute prosecutorial immunity, barring an action against all defendants. Rosenthal argues Zenker's conduct is not entitled to absolute immunity, but rather is entitled at best to only qualified immunity, because Zenker acted outside the quasi-judicial function by accusing Rosenthal of a violation of the Montana Streambed Preservation Act, advising the Madison County Sheriff about investigating Rosenthal, and compiling a file of reports about Rosenthal's alleged harassment to send to the Attorney General's office.

**ISSUES**

¶3 Rosenthal raises four issues on appeal:

3

¶4 (1) Did the Montana Tort Claims Act, § 2-9-305(1), MCA, abrogate the common law doctrine of prosecutorial immunity;

¶5 (2) Did the District Court correctly conclude that Defendants were entitled to summary judgment as a matter of law;

¶6 (3) Did the District Court correctly deny Rosenthal's M. R. Civ. P. 56(f) motion for additional discovery to allow investigation into Zenker's role as an investigator and legal advisor before ruling on summary judgment; and

¶7 (4) Did the District Court err in denying Rosenthal's request to add a claim for attorney's fees under the private attorney general doctrine.

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 On December 6, 2001, the Ruby Valley Soil Conservation District (RVSCD) sent County Attorney Zenker reports of a potential violation of the Montana Streambed Preservation Act, §§ 75-7-101-125, MCA, by Reid Rosenthal ("310 violation"). Along with the reports was a letter from the RVSCD chairman requesting prosecution of these violations and a copy of the letter from Fish, Wildlife and Parks biologist Richard Oswald to RVSCD indicating that Rosenthal's log and utility line project along Wisconsin Creek was a 310 violation. On January 3, 2002, Zenker received a letter from the RVSCD Board of Supervisors requesting prosecution of Rosenthal and stating that Don McIntyre, attorney for the Department of Natural Resources and Conservation, advised that Rosenthal's project was a 310 violation.

¶9 These reports and letters indicated that Rosenthal, as manager of the Three Creeks Ranch, LLC, had begun a bridge project by placing a log across Wisconsin Creek. A

4

utility line ran under the log. Neighboring property owners who had seen the log grew concerned that it was an unauthorized project contributing to environmental degradation of the Creek. Six people reported it to the RVSCD. Prior to filing a complaint Zenker wrote to Rosenthal, informing him of the potential violation and offering him an opportunity to acquire the requisite permit or remove the log and utility line. Through a number of correspondences, Rosenthal responded that his project was legal, that he had the requisite permit, and that he would not remove the project.

¶10 On January 24, 2002, Zenker filed a misdemeanor complaint charging Rosenthal with a 310 violation. On June 7, 2002, the District Court granted Rosenthal's request to allow an expert to testify on his behalf. The State retained its own expert. Upon learning that the State's expert was not confident there was a 310 violation beyond a reasonable doubt, Zenker moved to dismiss the complaint against Rosenthal on July 8, 2002.

¶11 On July 21, 2003, Mr. Curtis Kruer sent a letter to the Madison County Sheriff asking that Rosenthal be investigated and punished for threatening behavior towards Stephanie Kruer. Sheriff David Schenck notified Zenker of these complaints, seeking Zenker's input, and Zenker responded by suggesting a more thorough investigation. Zenker then contacted the Attorney General's Office regarding its possible prosecution of Rosenthal because Zenker perceived a potential conflict of interest between the parties. The victim in the case, a local public defender, had worked with Zenker in the past, creating a potential conflict. Additionally, Zenker believed Rosenthal held a grudge against the Madison County Attorney's Office because of the 310 case, and further involvement by Zenker would only inflame that grudge.

5

¶12 The Attorney General assigned the case to Barbara Harris, who charged Rosenthal with stalking and, in the alternative, trespass to property. According to Harris, a copy of the investigative file sent to her by Zenker was in turn copied and sent to Rosenthal on November 10, 2003, and April 9, 2004. Eventually, a trial was held and Rosenthal was found not guilty.

¶13 On May 14, 2004, Rosenthal filed his original malicious prosecution complaint against the Defendants herein. The court set October 15 as the deadline for amended pleadings. On October 22, Rosenthal requested leave to amend the pleadings, which Defendants opposed. On January 3, 2005, the District Court granted Rosenthal's motion to amend all counts but Count VI, which was a request for attorney's fees under the private attorney general doctrine.

¶14 On December 8, 2004, seven months after filing the complaint, Rosenthal's attorney sent a letter to Defendants' attorneys asking to arrange depositions for 19 people. On December 21, Paul Johnson, Attorney for the State and Zenker, responded to the request with deposition dates. On December 28, Rosenthal filed a notice of service of the first set of discovery requests sent to Defendant Zenker.

¶15 On January 14, 2005, Defendants filed a motion for summary judgment based on absolute immunity. They filed a brief and the supporting affidavits of Zenker and Harris five days later.

¶16 On January 25, 2005, Rosenthal filed his amended complaint and jury trial demand. The amended complaint set forth no additional facts, but added causes of action for intentional and negligent infliction of emotional distress, based on "Defendants'

6

intentional acts" without specifying those acts. The Defendants filed a motion for protective order the next day, a renewed motion for summary judgment on January 31, and an answer to the first amended complaint on February 4.

¶17 Between February 4 and 11, Rosenthal filed notices of depositions and subpoenas duces tecum for nine individuals. On February 11, Zenker filed an emergency motion to quash and the court granted it that day, forbidding the parties from conducting depositions before determination of summary judgment. On February 15, Rosenthal filed his "refusal" of summary judgment and a request for more time for discovery. On February 16, Rosenthal's attorney filed an affidavit in opposition to the motion for summary judgment, asserting personal knowledge of the facts at issue. Rosenthal's own affidavit was not filed until March 3.

¶18 On March 14, Defendants filed a response to Rosenthal's request for more time to conduct discovery, treating it as a M. R. Civ. P. 56(f). Defendants argued that Rosenthal failed to present a sufficient affidavit to meet the movant's burden under M. R. Civ. P. 56(f). Additionally, Defendants argued that further discovery would undermine the purpose of prosecutorial immunity.

¶19 On March 25, the District Court granted Zenker and the State's motion for summary judgment and dismissed the case with prejudice, later clarifying that the summary judgment was granted in favor of Madison County as well. After finding that summary judgment was appropriate, the District Court declined to address the additional motions of the parties because they were moot. On April 4, Rosenthal filed a timely notice of appeal.

7

¶20 In April, May and June, Rosenthal's attorney conducted depositions of Zenker, Harris, David Schenck, the Madison County Sheriff, and Evan Andren, the Madison County Undersheriff, in a separate unrelated matter involving a property dispute. During the deposition of Zenker, Rosenthal's attorney tried to ask Zenker questions regarding the malicious prosecution case. Zenker objected. In addition, during the deposition of Andren, Harris, and Schenck, Rosenthal asked questions relating to the malicious prosecution case. These questions were answered without objection.

¶21 Based upon what he learned in the depositions, Rosenthal filed a M. R. Civ. P. 60(b)(2) motion for relief, asserting newly discovered evidence that defeated Zenker's claim of absolute prosecutorial immunity, followed a week later by another motion for leave to file a second amended complaint. However, the District Court lacked jurisdiction to rule thereon in light of Rosenthal's previously filed notice of appeal. Consequently, Rosenthal sought from this Court a stay of the summary judgment appeal in order for the District Court to regain limited jurisdiction to rule on his M. R. Civ. P. 60(b)(2) discovery motion. We granted his motion for remand. The District Court then ordered the parties to brief the M. R. Civ. P. 60(b)(2) motion. After some procedural confusion involving another appeal and remand, the District Court denied Rosenthal's motion for relief under M. R. Civ. P. 60(b)(2) on March 30, 2006, on the basis that the newly discovered evidence was not material to the allegations in the first amended complaint and did not mandate a different result on the summary judgment motion. This appeal follows.

**STANDARD OF REVIEW**

¶22 We review orders of summary judgment de novo. *Bradley v. Crow Tribe of Indians*, 2005 MT 309, ¶¶ 12-15, 329 Mont. 448, ¶¶ 12-15, 124 P.3d 1143, ¶¶ 12-15. The purpose of summary judgment is to eliminate the burden and expense of unnecessary trials. *Hughes v. Pullman*, 2001 MT 216, ¶ 20, 306 Mont. 420, ¶ 20, 36 P.3d 339, ¶ 20. However, "all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment." *Cape v. Crossroads Correctional Center*, 2004 MT 265, ¶ 12, 323 Mont. 140, ¶12, 99 P.3d 171, ¶ 12. Where the movant has met its burden of showing that no genuine issues of material fact exist, the opposing party bears the burden of establishing an issue of material fact. The opposing party's facts must be material and of a substantial nature, and not fanciful, frivolous, or conjectural. *Fleming v. Fleming Farms, Inc.*, 221 Mont. 237, 241, 717 P.2d 1103, 1105-06 (1986).

¶23 The district court has discretion to decide whether to continue a motion for summary judgment pursuant to M. R. Civ. P. 56(f), on the basis that the party opposing the motion needs further discovery. This court reviews the denial of a M. R. Civ. P. 56(f) motion for an abuse of discretion. *Stanley v. Holms*, 1999 MT 41, ¶ 19, 293 Mont. 343, ¶ 19, 975 P.2d 1242, ¶ 19. Similarly, "[a] district court's grant or denial of attorney fees is a discretionary ruling which we review for abuse of discretion." *Harding v. Savoy*, 2004 MT 280, ¶ 68, 323 Mont. 261, ¶ 68, 100 P.3d 976, ¶ 68.

## DISCUSSION

**Did the Montana Tort Claims Act, § 2-9-305(1), MCA, abrogate the common law doctrine of prosecutorial immunity?**

9

¶24 Rosenthal first asserts that the enactment of the Montana Tort Claims Act, § 2-9-305, MCA, abrogated the common law doctrine of absolute prosecutorial immunity. He contends that § 1-2-103, MCA, supports this interpretation because it allows for a broad reading of a statute when it is at odds with the common law.

¶25 This argument is without merit. In 1976, we said: "It is an established general principle that any statutory waiver of a state's immunity from suit is to be strictly construed." *Storch v. Board of Dir. of East. Mont. Reg. Five M.H.C.*, 169 Mont. 176, 179, 545 P.2d 644, 646-47 (1976). That same year, this court held that unless a statute specifically refers to prosecutorial immunity, we cannot imply the abolishment of the well-founded common law doctrine. *State, etc. v. Dist. Ct., 8th Judicial Dist.*, 172 Mont. 88, 92, 560 P.2d 1328, 1330 (1976). Although Article II, Section 18, of the 1972 Montana Constitution abolished the concept of "sovereign immunity," we have stated that neither the Constitution nor the Montana Tort Claims Act abolished prosecutorial immunity. *State, etc.*, 172 Mont. at 92, 560 P.2d at 1330. In fact, we have extended the doctrine of prosecutorial immunity to include county and state governments employing the prosecutors who find themselves named defendants in tort actions. *Ronek v. Gallatin County*, 227 Mont. 514, 517-19, 740 P.2d 1115, 1117 (1987); *Koppen v. Board of Medical Examiners*, 233 Mont. 214, 220, 759 P.2d 173, 176 (1988).

¶26 In the alternative, Rosenthal maintains that Zenker is not entitled to statutory immunity because his conduct constituted oppression, fraud, and/or malice, and as such, did not arise out of the course and scope of his employment. See § 2-9-305(6)(a), MCA. However, as we explain below, we conclude that Zenker's actions were undertaken

within the authority vested in Zenker as a prosecutor, and were not outside of the course and scope of Zenker's employment.

**Did the District Court correctly conclude that Defendants were entitled to summary judgment as a matter of law?**

¶27 "The doctrine of immunity evolved to protect not only judges, but also certain participants in the judicial process whose functions are closely associated with those of judicial officers." *Steel v. McGregor*, 1998 MT 85, ¶ 25, 288 Mont. 238, ¶ 25, 956 P.2d 1364, ¶ 25. Prosecutors are entitled to absolute immunity as "quasi-judicial officers" when their judgments and conduct are functionally comparable to those implemented by judges. *Steel*, ¶ 25, citing *Butz v. Economou*, 438 U.S. 478, 512, 98 S. Ct. 2894, 2913 (1978). In *Steel*, ¶ 26, we stated:

> Like judicial immunity, quasi-judicial immunity benefits the public—not the person being sued—by ensuring that quasi-judicial officers exercise their functions unfettered by fear of legal consequences; also like judicial immunity, quasi-judicial immunity extends only to acts within the scope of the actor's jurisdiction and with the authorization of law. . . . To be protected by quasi-judicial immunity, the person asserting the immunity must have acted in a quasi-judicial capacity. [Internal citations omitted.]

¶28 Rosenthal alleges that Zenker's conduct fell outside the scope of the quasi-judicial capacity (1) when Zenker filed a complaint against Rosenthal for a 310 violation; (2) when Zenker discussed with Undersheriff Evan Andren the investigation of a stalking complaint against Rosenthal; and (3) when Zenker compiled and sent the investigative file on the stalking and trespassing to the Attorney General's Office. We address these allegations in turn.

    **A.    Zenker's filing a misdemeanor complaint and later dismissing the same complaint.**

11

¶29 Filing and maintaining criminal charges are among the many duties of a prosecutor and when a prosecutor acts within the scope of these duties, that prosecutor is absolutely immune from civil liability, regardless of negligence or lack of probable cause. *State, etc.*, 172 Mont. at 92, 560 P.2d at 1330; *Ronek*, 227 Mont. at 518-519, 740 P.2d at 1118. It is clear from the record that Zenker acted within the prosecutorial authority when Zenker filed a complaint against Rosenthal for the 310 violation. Zenker also acted within the quasi-judicial function, and according to prosecutorial ethics, when Zenker later dismissed the complaint upon learning of another expert's opinion. This is precisely the type of conduct that the prosecutorial immunity doctrine was designed to protect. As noted by the U.S. Supreme Court:

> To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. . . . There would always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case. . . . The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded and we would have moved away from the desired objective of stricter and fairer law enforcement. [citation omitted].

*Imbler v. Pachtman*, 424 U.S. 409, 423-24, 96 S. Ct. 984, 992 (1976).

¶30 As the U.S. Supreme Court has held, the prosecutorial immunity doctrine requires a functional analysis of whether the prosecutor's conduct was quasi-judicial rather than an emotional analysis of whether the prosecutor had malice. *Imbler*, 424 U.S. at 429-30, 96 S. Ct. at 994. Therefore, even if Zenker had arguably improper motives that influenced the decision to file the complaint, the decision to file the complaint was within

12

Zenker's authorized discretion and such motives cannot deprive a prosecutor of absolute immunity. Zenker properly exercised discretion, both in filing the complaint and in subsequently dismissing it when faced with the State's expert's equivocation. Accordingly, we conclude that Zenker is entitled to absolute immunity for this conduct.

**B.     The stalking complaint and prosecution**

¶31     Rosenthal argues that Zenker improperly participated in the investigation and gave legal advice to the Undersheriff who had been assigned to the stalking case. The State and Zenker contend that all of the conduct of which Rosenthal complains centers around the initiation and prosecution of criminal charges, for which absolute immunity attaches.

¶32     After several complaints by the Kruers, Sheriff Schenck forwarded the complaints to Zenker for a determination on how to proceed. After reading the chronology, Zenker wrote a letter to Schenck on April 1, 2003, in which Zenker advised Schenck to go ahead with a thorough investigation. Zenker asked the Sheriff to

> [p]lease assign an officer to conduct a further investigation and provide me with a report.
> Among the things you deem necessary, please ask the officer to recover all evidence referred to in the chronology (Copies of all letters, emails, telephone answering machine tapes, etc.). Also the officer should please ask the Kruers to provide a written statement regarding whether, and to what degree they suffered substantial emotional distress.
> Finally, I recommend that the investigating officer offer the suspect the opportunity to make a statement. Specifically, the officer should ask for clarification of the purpose of his continued attempts to communicate with the Kruers despite their repeated attempts that he not do so.

¶33     After the investigator compiled the complaints and performed his investigation, he forwarded the information to Zenker at the Madison County Attorney's Office. Zenker in turn sent the file to the Attorney General's Office for further handling, asking them to

review the file and prosecute any charges that the Attorney General deemed viable. Zenker properly handed the case off to the Attorney General precisely because Zenker concluded that further participation in the case could be perceived as a conflict. While Zenker may have encouraged the Attorney General to prosecute the case, the ultimate decision to file a complaint was made by the Attorney General and not Zenker. Under these circumstances, we conclude that Zenker was entitled, at the very least, to qualified immunity for those actions.

### C. Qualified immunity still protects Zenker

¶34 Where allegedly injurious conduct arguably falls outside of the quasi-judicial functions, the prosecutor's conduct is entitled to qualified immunity rather than absolute immunity. "The doctrine of qualified immunity operates to shield government officials performing discretionary functions from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Losleben v. Oppedahl*, 2004 MT 5, ¶ 13, 319 Mont. 269, ¶ 13, 83 P.3d 1271, ¶ 13. We use a two-part test for determining whether the qualified immunity shield applies. *Sacco v. High Country Press*, 271 Mont. 209, 896 P.2d 411, 415 (1995). First, we consider in a light most favorable to the party asserting injury, whether the official's conduct violated a clearly established constitutional right. *Losleben*, ¶ 14, citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). If not, qualified immunity bars the suit and the case should be dismissed. *Losleben*, ¶ 14. If so, we determine whether a reasonable person or official would have known that his conduct violated that right. *Losleben*, ¶ 14.

14

¶35 Rosenthal does not allege, nor does the record reveal, the violation of any constitutional right by virtue of the Defendants' actions. This being so, under *Losleben*, qualified immunity bars the suit (assuming for the sake of Rosenthal's argument that absolute immunity does not). Moreover, as the District Court pointed out in its Decision and Order, Zenker's performance of those prosecutorial duties with respect to both the 310 violation and the stalking complaint was guided by the existence of sufficient probable cause. Among other things, Zenker was presented with (1) the RVSCD chairman's letter requesting prosecution of Rosenthal based on specific complaints of six individuals who lived along Wisconsin Creek; (2) a letter from Richard Oswald, a biologist with the Montana Department of Fish, Wildlife and Parks, indicating that Rosenthal was in violation of the 310 law; (3) several investigation reports, including photos, prepared by members of the State inspection team indicating that the log and power line crossing were in violation of the 310 law; and (4) the January 3, 2002, letter from the RVSCD Board of Supervisors requesting that Madison County prosecute Rosenthal. As to the stalking matter, the case was brought following several complaints and at the instigation of Curtis Kruer, a citizen who perceived that his wife was being threatened by Rosenthal. Zenker did not instigate this case, nor did Zenker prosecute it.

¶36 In sum, we conclude the District Court did not err in determining that under the facts presented, Zenker was entitled to immunity—be it absolute or qualified—for his actions undertaken in connection with the prosecutions of Rosenthal.

**Did the District Court abuse its discretion when it denied Rosenthal's Rule 56(f) Motion?**

¶37 Next, Rosenthal argues the District Court erred in denying his M. R. Civ. P. 56(f) motion for additional discovery. As we have stated many times, the district courts have inherent discretionary power to control discovery. *Environmental Contractors, LLC v. Moon*, 1999 MT 178, ¶ 19, 295 Mont. 268, ¶ 19, 983 P.2d 390, ¶ 19. "This discretionary power extends to deciding whether to deny or to continue a motion for summary judgment pursuant to Rule 56(f), M. R. Civ. P., on the basis that the party opposing the motion needs further discovery." *Stanley*, ¶ 19. M. R. Civ. P. 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

¶38 A district court does not abuse its discretion in denying a M. R. Civ. P. 56(f) motion where the party opposing a motion for summary judgment does not establish how the proposed discovery could preclude summary judgment. *J.L. v. Kienenberger*, 257 Mont. 113, 120, 848 P.2d 472, 477 (1993, rev'd in part on other grounds); *Howell v. Glacier General Assur. Co.*, 240 Mont. 383, 386, 785 P.2d 1019, 1020 (1989, rev'd in part on other grounds).

¶39 Rosenthal claims that additional discovery would allow him to demonstrate Zenker's animus toward him. He argues that he should not be required to specify with precision what information he believes he will secure from discovery because he is unsure what he will learn from facts in the possession of others. He asserts that his affidavit sets forth sufficient evidence to support his claim that Zenker acted with oppression and malice. We disagree. Rosenthal's affidavit fails to meet the requirements

16

of M. R. Civ. P. 56(e) and 56(f) because his statements are speculative and based on belief rather than personal knowledge. Throughout his affidavit, Rosenthal accuses Zenker of threatening remarks yet is unable to substantiate these accusations or provide affidavits of additional witnesses.

¶40 Moreover, the affidavit of Rosenthal's attorney is wholly inadequate because he lacks personal knowledge of the threats and is merely restating his client's version of the story. As we said in *Hiebert v. Cascade County*, 2002 MT 233, ¶ 30, 311 Mont. 471, ¶ 30, 56 P.3d 848, ¶ 30, "[w]e have previously held that 'an attorney's affidavit is admissible only to prove facts that are within his personal knowledge and as to which he is competent to testify; an affidavit stating what the attorney believes or intends to prove at trial will be disregarded.' "

¶41 Rosenthal argues that he has not been afforded any opportunity to perform discovery and that the District Court's denial of his M. R. Civ. P. 56(f) request denied him that opportunity. This argument misconstrues the facts. Rosenthal had every opportunity between May 14, 2004, when he filed his malicious prosecution claim, and January 14, 2005, when Defendants filed their summary judgment motion, to request discovery from the Defendants. However, Rosenthal made no attempts at discovery until December 8, 2004, when he sent a letter to Defendants' attorneys asking them to calendar depositions with 19 people, and December 28, when he filed a notice of service of the first set of discovery requests to Defendant Zenker. On the other hand, the record is clear that the Defendants complied with discovery rules and Rosenthal's demands for discovery.

¶42 A court need not force a party to undergo more discovery when "[t]he only reason to believe that additional, relevant evidence would materialize . . . is the [plaintiff's] apparent hope of finding a proverbial 'smoking gun.' " *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005). Rosenthal has failed to establish what evidence he aimed to secure or how that evidence would preclude summary judgment on the basis of absolute immunity. Moreover, even if we were to speculate with Rosenthal that new evidence would establish that Zenker's conduct was entitled to qualified immunity rather than absolute immunity, he does not show how he will pierce the qualified immunity shield protecting Zenker.

¶43 Although the District Court did not reach the merits of the M. R. Civ. P. 56(f) motion on the basis that it was moot after granting summary judgment, "[w]e will uphold a district court's decision if correct, regardless of the reasons given below for the result." *State v. Rensvold*, 2006 MT 146, ¶ 34, 332 Mont. 392, ¶ 34, 139 P.3d 154, ¶ 34. We conclude the District Court did not abuse its discretion when it denied Rosenthal's M. R. Civ. P. 56(f) motion.

**Did the District Court abuse its discretion when it denied Rosenthal's claim for attorney's fees under the private attorney general doctrine?**

¶44 Rosenthal argues that the allegations in his complaint were sufficient to satisfy the "private attorney general" fee shifting requirement. The State of Montana rebuts that the court correctly denied Rosenthal's request to add this new count to his amended complaint on the basis of futility, because on the face of the pleadings this case does not qualify for fee shifting.

¶45 We agree. Moreover, in light of our conclusion here that summary judgment was appropriate, we need not address the propriety of an amendment to support Zenker's claim for attorney's fees.

## CONCLUSION

¶46 We conclude that summary judgment on the basis of absolute prosecutorial immunity was appropriate. The moving parties met their burden by showing that they were entitled to judgment as a matter of law. The burden then shifted to Rosenthal to show that there was a genuine issue of material fact precluding summary judgment. Construing the facts in favor of Rosenthal, we conclude that Rosenthal has not met his burden because one cannot do so by merely speculating that malicious conduct may be revealed by further discovery. We further conclude that the District Court did not err in refusing to allow Rosenthal to state a claim for attorney's fees under the private attorney general doctrine.

¶47 Therefore, we affirm.


/S/ PATRICIA COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE