JUSTICE RICE,
dissenting.
¶55 I believe the Court’s opinion is flawed analytically, with the unfortunate result being, both here and in the future, that the State will be exposed to civil liability for actions taken by its prosecutors pursuant to discretion specifically provided to them by law, and for which immunity has been granted.
¶56 In my view, the Court has constructed a complicated framework to reach conclusions which embrace the facts on one hand, and turn from the reality of those facts on the other. For purposes of establishing liability, the Court holds that the breach of contract was the determination “to initiate a formal revocation hearing” by the “Deputy Flathead County Attorney [who] was acting as an agent of the State of Montana when he filed the petition to revoke.” Opinion, ¶¶ 15, 36. Thus, the State is liable because its agent, the prosecutor, filed a proceeding in breach of the contract. However, for purposes of immunity, the Court insists that McDaniel’s claims “are not premised *441 on any notion that the prosecutor’s act of filing the petition was wrongful in itself,” and that it is “the failure of the State itself to perform the terms of its alleged contract.” Opinion, ¶ 21 (emphasis added). In the Court’s view, the State is not acting through its agent-prosecutor for purposes of immunity and prosecutorial immunity may therefore be bypassed. Thus, under the Court’s analysis, the wrongful act by the agent which created the liability of the principal has been transformed for immunity purposes into an act which, first, was not actually wrongful, and second, did not legally involve the agent. I believe this is a faulty analysis on several grounds.
¶57 The Court reaches these conflicting conclusions by reasoning that because “the State’s agents were not parties to the alleged contract... they cannot be liable to McDaniel for breaching.” This is premised upon the Court’s assertion, made without citation to authority, that “there is no factual or legal basis for McDaniel to bring his contract-based claims against the Deputy County Attorney.” To the contrary, an agent’s act in breach of the principal’s contract may well be actionable against both the agent and the principal, even if the agent was not a party to the contract, because the principal for whom the agent acted was a party. See Crystal Springs Trout Co. v. First State Bank, 225 Mont. 122, 129, 732 P.2d 819, 823 (1987) (“an agent is jointly and severally liable with his principal to third parties for wrongful acts committed in the course of his agency.”) However, we need not resolve this joint liability issue to decide this case.
¶58 Although liability and immunity are different concepts, nonetheless, the State here acted only by way of its agent, and could not have acted without its agent. The Court’s assertion that “the State itself’ breached the contract is simply not true. The State did not “act by itself.” Had the prosecutor not acted, there would have been no breach of contract. Thus, only by accepting McDaniel’s creative, yet impossible allegation that the State acted without an agent can the Court conclude that the State must stand apart from its ágent for immunity purposes. There is no authority for this proposition and it is legal fiction.[1]
¶59 Refocusing on what I believe is the factual reality of this case, McDaniel sued the State because the Deputy County Attorney *442 initiated a prosecution against him, which breached the contract. Neither party disputes that the prosecutor was acting as an agent of the State and within the scope of his duties when he filed the petition to revoke against McDaniel. As the Court correctly states, “the terms of the agreement were breached” when “the State initiated a formal revocation hearing.” Opinion, ¶ 36. In other words, the “act” which forms the basis of McDaniel’s complaint was committed by a State agent pursuant to the prosecutorial discretion afforded to him by law.
¶60 Regarding immunity for this act, we have held that a prosecutor is “absolutely immune from civil liability” when he acts within the scope of his duties. Rosenthal v. Co. of Madison, 2007 MT 277, ¶ 29, 339 Mont. 419, 170 P.3d 493. Notably, we did not qualify the immunity by holding that prosecutors are immune from “civil tort actions,” but rather from “civil liability” generally and absolutely, a broader definition. Further, we stated that initiating prosecutions and dismissing complaints are precisely the sorts of actions prosecutorial immunity was designed to cover. Rosenthal, ¶ 29.
¶61 A proper analysis of this case would determine whether immunity defeats McDaniel’s suit under the Supreme Court’s “functional analysis.” Rosenthal, ¶ 29 (citing Imbler v. Pachtman, 424 U.S. 409, 429-30, 96 S. Ct. 984, 994 (1976)). “This approach examines the nature of the functions with which a particular official or class of officials has been lawfully entrusted, seeking to evaluate the ‘effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.’ ” Steele v. McGregor, 1998 MT 85, ¶ 15, 288 Mont. 238, 956 P.2d 1364 (quoting Forrester v. White, 484 U.S. 219, 224, 108 S. Ct. 538, 542 (1988)). “[IJmmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.” Forrester, 484 U.S. at 227, 108 S. Ct. at 544 (emphasis added). The judicial lens should focus upon the actions taken by the governmental agent, not the type of suit brought by the claimant, the political subdivision selected by the litigant, or any other crafty pleading technique. Imbler, 424 U.S. at 429-30, 96 S. Ct. at 994-95; see also Burns v. Reed, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939 (1991); Westfall v. Erwin, 484 U.S. 292, 296 n. 3, 108 S. Ct. 580, 583 n. 3 (1988); Culpepper v. Smith, 792 S.W.2d 293, 300 (Ark. 1990) (holding the only condition to applying the immunity to prosecutors is the determination of whether the acts complained of were acts committed within the scope of their prosecutorial duties).
¶62 Clearly, the prosecutor’s filing of the revocation action was functionally within the scope of his normal duties. However, the Court *443 has mistakenly focused on the distinction between contract and tort claims, instead of on function. Any breach of the Intervention Hearing Agreement at issue here occurred singularly because the Flathead County Deputy Attorney exercised his discretion by filing a petition for revocation of McDaniel’s sentence. As a prosecutor acting within the scope of the duties he is charged with administering, his actions are absolutely immunized from civil liability. This common, virtually daily prosecutorial task of filing a petition to revoke should not expose the State to civil liability.
¶63 Once the challenged acts are functionally determined to be within the scope of the prosecutor’s duties and immunized, immunity likewise extends to the State. State ex. Rel. Dept. of Justice v. Dist. Ct., 172 Mont. 88, 560 P.2d 1328 (1976). The Court’s suggestion that such an extension in this case could only occur through “derivative immunity” is not correct, given a proper application of the function analysis. In Dept, of Justice, we held that the doctrine of prosecutorial immunity must encompass the State as well as the prosecutor:
The public policy which requires immunity for the prosecuting attorney also requires immunity for both the state and the county for acts of judicial and quasi-judicial officers in the performance of the duties which rest upon them; otherwise, the objectives sought by immunity to the individual officers would be seriously impaired or destroyed.
Dept. of Justice, 172 Mont. at 92, 560 P.2d at 1330 (emphasis added) (quoting Creelman v. Svenning, 410 P.2d 606, 608 (Wash. 1966)). Thus, the State may raise the defense of prosecutorial immunity to shield itself from liability against claims founded upon the discretionary acts of a prosecutor within the scope of his duties.
¶64 The Court has concluded, without the aid of primary authority, that the Deputy County Attorney must first be personally liable before the State can assert co-extensive immunity. See Opinion, ¶ 20 (“For the State to ‘extend’... immunity to itself, the State must first establish that the Deputy County Attorney could raise prosecutorial immunity.”). However, in addition to the contrary principles discussed above, we declined a similar proposition made in Koppen v. Board of Med. Examrs., 233 Mont. 214, 759 P.2d 173 (1988). Justice Sheehy’s separate opinion in Koppen took the position that:
No question is presented in this case that relates to the personal liability of the Board members who allegedly failed to act .... When there is no risk of personal liability for damages to the *444 government officials involved, the reason for common law official liability evaporates.
Koppen, 233 Mont. at 221, 759 P.2d at 177. The Court was not persuaded that immunity should only apply when Board members are subject to personal liability, holding that “the quasi-judicial immunity afforded to the Board must encompass the State. The Board’s discretion would be equally subject to distortion by considerations of possible litigation against the State arising from its actions.” Koppen, 233 Mont. at 220, 759 P.2d at 176.
¶65 I believe the Court’s analysis further errs by its application of § 18-l-404(l)(a), MCA, on which the Court premises the State’s liability for breach of contract. This provision is from Title 18, the public contracting section of the Code, which regulates “resident bidders” and “nonresident bidders,” contracts for “goods,” and “construction, repair and public works,” “hiring preferences,” “bid security,” “contracting entities,” “advertisement for bids,” “forfeiture of contracts,” “prepayment of public contractors,” and such like. This statute has nothing to do with the criminal proceeding out of which McDaniel’s claim arises, but is a civil statute. We have previously said that “[t]his individual statute may not be read and properly understood in a vacuum.” Peretti v. State, 238 Mont. 239, 244, 777 P.2d 329, 332 (1989). Section 18-1-404, MCA, was enacted as part of “An Act Permitting Action on Express Contracts Against the State of Montana and Describing the Practice and Procedure Thereof.” Peretti, 238 Mont. at 245, 777 P.2d at 333. It provides “[t]he state of Montana is liable in respect to any contract entered into in the same manner and to the same extent as a private individual under like circumstances, except the state of Montana is not liable for punitive damages.” Section 18-1-404, MCA. Beyond having never been previously applied to claims arising out of the criminal law context, the plain wording of the provision demonstrates the Court’s use is improper. Under what “like circumstances” could a private individual ever enter a contract to defer prosecution of a criminal offender? More critically, it is error for the Court to hold that § 18-l-404(l)(a), MCA, constitutes a waiver of prosecutorial immunity, when the provision does not even come close to doing so by its terms. “As with prosecutorial immunity, quasi-judicial immunity is not a subject of Montana statutory law.... where the law is not declared by statute, the common law shall be the rule of a decision.” Koppen, 233 Mont. at 218, 759 P.2d at 175. However, under the Court’s holding, this statute has effectuated such a waiver of prosecutorial immunity.
*445 ¶66 Though we have applied contract law generally in interpreting agreements concerning criminal defendants, intervention, plea, and other agreements are not conventional obligations, and we have never concluded that they would support a separate civil cause of action for damages upon a breach, consistent with the law generally in that regard. See 17B C.J.S. Contracts § 600 (1999); Lewis v. La., 602 So. 2d 68, 75 (La. App. 1992). The intervention agreement is part of Montana’s Criminal Procedure, Title 46, MCA. Could the State civilly sue a defendant for breach of contract for breaching a plea agreement, and collect damages? Under the Court’s reasoning, it apparently could be done.
¶67 Finally, the Court reasons that because application of prosecutorial immunity would affect the same result as sovereign immunity, it should similarly be disposed, citing the sovereign immunity cases of Orr and Peretti. Opinion, ¶ 23. However, though prosecutorial immunity and sovereign immunity may reach a functionally equivalent result, these two immunities are distinct concepts supported by separate policy rationale. Dept. of Just., 172 Mont. at 92, 560 P.2d at 1330. Sovereign immunity, or governmental immunity, stems from a state’s classification as a sovereign entity. It prevents citizens from suing a state absent its consent regardless of the type of harm claimed. Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S. Ct. 526, 527 (1907) (“there can be no legal right as against the authority that makes the law on which the right depends”). Unlike sovereign immunity, which is premised upon a state’s status, prosecutorial immunity depends upon the actions the prosecutor took when the alleged harm occurred, and applies only to acts committed within the scope of a prosecutor’s official duties. Imbler, 424 U.S. at 422-23, 96 S. Ct. at 991. We have cited and relied upon important policies supporting prosecutorial immunity, noting the potential influence upon a prosecutor’s decision-making was precisely the catalyst for the adoption of prosecutorial immunity. As the Supreme Court stated over thirty years ago:
The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grant jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor’s energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.
*446 Imbler, 424 U.S. at 422-23, 96 S. Ct. at 991. The reason for extending immunity to public officials such as prosecutors and judges is not for the protection or benefit of a malicious or corrupt official, but for the benefit of the public, whose interest is that officials should be at liberty to exercise their functions with independence and without fear of retribution. Pierson v. Ray, 386 U.S. 547, 553-54, 87 S. Ct. 1213, 1218 (1967).
¶68 The Court’s decision today conflicts with these important policy considerations. As a practical consequence, prosecutors will now need to consider the potential for claims which could be brought against the State because of their actions-even those within the normal scope of their prosecutorial duties.
¶69 I would affirm the District Court’s order dismissing McDaniel’s complaint and awarding summary judgment to the State on the grounds of prosecutorial immunity. I would not reach Issue Two.
JUSTICE WARNER joins in the dissent opinion of JUSTICE RICE.

 The Court also classifies the State’s argument as one for “derivative immunity,” which the Court discusses at length and then dismisses. However, this is a “straw man” analysis. For the reasons explained herein, there is no need for the State to seek derivative immunity, and it has not.